(86 N. W. Rep. 354.)

---

HENRY McGUIN, *et al vs.* JOSEPH E. LEE, *et al.*

Opinion filed April 23, 1901.

**Deeds—Stipulation for Re-conveyance.**

> M. and wife executed and delivered to L. a warranty deed of lands partly owned by the wife and partly by M., in consideration of the release and taking up of certain secured and unsecured debts of M., and the leasing to M. of such lands for farming purposes. M. received a written lease of such lands from L. at the same time the deed was given, M. and wife retaining possession. Such lease contained a special provision that L. would reconvey such lands on payment of a fixed sum at a fixed time, such sum being the sum total of such debts. *Held,* that such stipulation to reconvey on conditions did not constitute the deed presumptively a mortgage.

**Unconditional Transfer—Estoppel.**

> M.'s wife held the title to part of such lands in her name, the other being their homestead. She delivered a deed to such lands through a notary to L. unconditionally, L. not since having notice of any intention on her part to convey such lands contrary to that expressed in the deed. *Held*, that she cannot claim such deed to be a mortgage as against L., who acted upon and relied upon it as an absolute deed.

**Evidence Insufficient to Show Deed a Mortgage.**

> Evidence examined, and *held* not to sustain the contention that such deed was a mortgage.

**Evidence Required to Show Deed a Mortgage.**

> *Held*, further, that in an action to have such deed declared to be a mortgage plaintiffs must show the deed to be a mortgage by evidence clear, specific, satisfactory, and convincing. The rule in Jasper v. Hazen, 58 N. W. 454, 4 N. D. 1, 23 L. R. A. 58, followed.

Appeal from District Court, Pembina County; *Sauter*, J.

Suit by Henry McGuin and wife against Joseph E. Lee and others to have a certain deed construed to be a mortgage. From a judgment in favor of defendants, plaintiffs appeal.

Affirmed.

. *Templeton & Rex*, for appellants.

As to Mrs. McGuin the so-called deed must be held to be a mortgage. The intent at the time of the delivery of the deed governs. .Where a husband and wife make a conveyance absolute in terms of property belonging to the wife, the husband conducting the negotiation with the grantee, the intent of the wife in delivering the deed governs as to the nature of the transaction. If she understood the deed was security for her husband's debt, the transaction is a mortgage, whatever may have been the intention as between the husband and his creditor before the instrument was delivered. Jones on Mtgs., § 324; *Davis* v. *Brewster*, 59 Tex. 93; *Regan* v. *Simpson*, 27 Wis. 355; *Gilbert* v. *Deshon*, 107 N. Y. 324. Defendants Williams and the Fargo Loan Agency are in no better position than Lee. Plaintiffs were in the actual possession of the premises at the time of the transfer to them, and notice of plaintiff's rights was imputed to them. *O'Toole* v. *Omlie*, 8 N. D. 444. The inadequacy of the consideration and the embarrassed circumstances of the grantors strongly support the theory that the transaction was a mortgage. *Reed* v. *Reed*, 75 N. W. Rep. 264; *Huscheon* v. *Huscheon*, 12 Pac. Rep. 410; *Macauley* v. *Smith*, 132 N. Y. 524, 30 N. E. Rep. 997; *Book* v. *Beasley*, 40 S. W. Rep. 101; *Caldwell* v. *Melvedt*, 61 N. W. Rep. 1091; *Gilchrist* v. *Beswick*, 10 S. E. Rep. 371; *Cobb* v. *Day*, 17 S. W. Rep. 323. The retention by Lee of the notes constitutes most potent evidence in support of plaintiff's contention. *Schierl* v. *Newburg*, 78 N. W. Rep. 761; *Ferris* v. *Wilcox*,

51 Mich. 105, 16 N. W. Rep. 252. The agreement to pay interest on the consideration named in the deed establishes to a certainty that the transaction was a mortgage. *Voss* v. *Eller,* 109 Ind. 260, 10 N. E. Rep. 74; *Murphy* v. *Calley,* 1 Allen, 107; *Bearss* v. *Ford,* 108 Ill. 16. A lease seems to be a common resort to strengthen the apparent legal title when taken merely as security. *Hoile* v. *Bailey,* 17 N. W. Rep. 322. But notwithstanding a lease was taken back the transaction was nevertheless a mortgage transaction. *Steele* v. *Bond,* 28 Minn. 267; *Wright* v. *Bates,* 13 Vt. 341; *Regan* v. *Simpson,* 27 Wis. 355; *Robb* v. *Vos,* 155 U. S. 13; *Boatright* v. *Peck,* 33 Tex. 68; *Rogers* v. *Davis,* 59 N. W. Rep. 265; *Haggerty* v. *Brower,* 75 N. W. Rep. 321; *Grand Order of Odd Fellows* v. *Menlin,* 5 At. Rep. 544; *Guither* v. *Clark,* 8 At. Rep. 544; *Lounsberry* v. *Norton,* 22 At. Rep. 153; *Mears* v. *Strobach,* 40 Pac. Rep. 621. The court in similar cases have considered the whole evidence and determined the effect of the entire transaction. *Horn* v. *Keteltas,* 46 N. Y. 607; *Carr* v. *Carr,* 52 N. Y. 257; *Meyer* v. *Elev. Co.,* 80 N. W. Rep. 189; *Nightingale* v. *Barens,* 47 Wis. 389; *Pico* v. *Cuyas,* 47 Cal. 180. In many states it is held that a deed and contemporaneous agreement to reconvey on payment of the amount of the indebtedness owing by the grantor to the grantee is conclusively presumed to be a mortgage. *Clark* v. *Landon,* 51 N. W. Rep. 357; *Watkins* v. *Williams,* 31 S. E. Rep. 388; *Kelley* v. *Leachman,* 29 Pac. Rep. 849; *Snow* v. *Pressey,* 20 At. Rep. 78; *Copeland* v. *Yoakum,* 38 Mo. 350; *Gunn's Appeal,* 10 At. Rep. 498; *Weisham* v. *Hocker,* 54 Pac. Rep. 464; *Frey* v. *Campbell,* 3 S. W. Rep. 368. In other jurisdictions where a deed is executed and an agreement to reconvey given back as part of the same transaction, presumptively the deal is for security and not an absolute sale. *Mears* v. *Strobach,* 40 Pac. Rep. 621; *Keithley* v. *Wood,* 38 N. E. Rep. 149; *Crosby* v. *Buchanan,* 1 So. Rep. 898. When the evidence leaves the mind of the court in doubt the transaction should be held a mortgage. *Jeffrey* v. *Robbins,* 167 Ill. 375; *Rockwell* v. *Humphrey,* 15 N. W. Rep. 394; *Book* v. *Beasley,* 40 S. W. Rep. 101; *Niggeler* v. *Mauvin,* 34 Minn 118, 24 N. W. Rep. 369; *O'Toole* v. *Omlie,* 8 N. D. 444.

*Cochrane & Corliss,* for respondents.

The most convincing proof is required to overthrow the most solemn of all written instruments—a deed of real property. 1 Jones on Mtgs., § 355; *May* v. *May,* 42 N. E. Rep. 56; *Burgett* v. *Osborne,* 50 N. E. Rep. 206; *Jasper* v. *Hazen,* 4 N. D. 1. Where it appears that the parties to the deed, absolute on its face, intended an absolute sale, with simply the right to re-purchase the land and takes a bond for reconveyance containing no condition which might stamp the transaction as a mortgage, such intention must control, and the instrument be declared a deed. 1 Pingree on Mtgs., § 90; *Dignan* v. *Moore,* 26 Pac. Rep. 146; *Conway* v. *Alexander,* 7 Cranch, 218; *Henley* v. *Hotaling,* 41 Cal. 22; 1 Jones on Mtgs., § 256.

Where the grantor has in terms, declared that his sole right is that of an option to re-purchase, the same degree of evidence to overthrow the writing and show that the transaction was a mere mortgage should be required of him as when he attempts to overthrow the terms of a deed absolute on its face. 1 Jones on Mtgs., § § 260, 261; 1 Pingree on Mtgs., § 99;*Wallace* v. *Johnstone,* 9 Sup. Ct. Rep. 245. It is not at all important that the price at which the grantor is to have the right to repurchase is exactly equal to the amount of the debt specified by the conveyance of the land to the grantor. *Vance* v. *Anderson,* 45 Pac. Rep. 816; *Rue* v. *Dole,* 107 Ill. 275; *Robertson* v. *Company,* 76 N. W. Rep. 736; 15 A. & E. Enc. L. 785; Jones on Mtgs., § § 265, 267; *Tygrett* v. *Potter,* 29 S. W. Rep. 976; *Great Western Mfg. Co.* v. *Bank,* 50 Pac. Rep. 941. The really controlling question in this class of cases is, whether the debt is or is not extinguished. 15 A. & E. Enc. L. 780, 781, 785; 2 Pom. Eq. Jur. § 1195; 1 Jones on Mtgs., § § 258, 265, 267, 269; *Wallace* v. *Smith,* 25 At. Rep. 811; *Rue* v. *Dole,* 107 Ill. 275; *Burgett* v. *Osborne,* 50 N. E. Rep. 206; *Bacheller* v. *Bacheller,* 33 N. E. Rep. 24; *Henley* v. *Hotaling,* 41 Cal. 27. Inadequacy of price is not at all decisive in favor of the transaction being a mortgage. 15 A. & E. Enc. L. 781; *Story* v. *Springer,* 39 N. E. Rep. 572; *Rue* v. *Dole,* 107 Ill. 283; *Bogk* v. *Gassert,* 13 Sup. Ct. Rep. 738; *Carr* v. *Rising,* 62 Ill. 14. That the grantor in an absolute deed cannot have a decree adjudging it a mortgage on mere proof, however strong, that he had a secret undisclosed intention that the instrument should be ·merely a mortgage, the grantee appearing to have treated the instrument as an absolute transfer and altered his position on such assumption, is plain. 1 Jones on Mtgs. § 335; 1 Pingree on Mtgs., § 66; *Holmes* v. *French,* 9 Mo. 201; *Phoenix* v. *Gardner,* 13 Minn. 430; *Jones* v. *Jones,* 17 N. Y. Supp. 905; *Willson* v. *Parshall,* 29 N. E. Rep. 297; *Wallace* v. *Smith,* 25 At. Rep. 807; *Baxter* v. *Willey,* 31 Am. Dec. 623.

Morgan, J. The principal issue in this case is raised by the allegations of the complaint, stated substantially as follows: That the plaintiffs, husband and wife, made and delivered to LaMoure & Lee, defendants, on March 7, 1894, a warranty deed of two quarter sections of land in Pembina county, one of such quarters owned by the wife, and the other the homestead of the plaintiffs. That such warranty deed was thus delivered to said defendants as security for certain debts due said defendants and as security for debts due to others, which debts were to be assumed and paid by defendants; which was not intended or understood by the parties thereto to be given as an absolute deed. The complaint demands that such deed be declared a mortgage upon payment of all sums intended to be secured thereby. An accounting is demanded, and other relief, not necessary to mention here. The answer denies that such deed was intended to be given as security, and alleges that it was given, and understood to be given, as an absolute deed. The trial

court found for the defendants. The plaintiffs appeal, and ask for a trial anew.

The evidence given on the trial is quite voluminous, but the following summary of it will suffice to give a correct understanding of the facts out of which this litigation has grown: Henry McGuin, one of the plaintiffs, and Judson LaMoure had business dealings from about 1883 up to date of the giving of this deed, on March 7, 1894, and during all this time McGuin was LaMoure's debtor. About this latter date Mr. McGuin was deeply involved in debt. On the lands in suit taxes were due and unpaid to the amount of $127.13. There were mortgage liens on the lands, amounting, with accrued interest, to $2,342.60. One of these mortgages, amounting, with interest, to $749.00, was being foreclosed. On these lands Mr. LaMoure held a second mortgage, originally given in 1890, amounting, with interest to March, 1894, to $1,151.60, which mortgage is included in the total of mortgages given above. Mr. McGuin also owed Mr. LaMoure and LaMoure & Lee unsecured debts amounting, with interest, to $289.82. He also owed Randall & Norton between $700 and $800, secured by chattel mortgage. In the winter of 1894 the $660 mortgage, amounting to $749, was about to be foreclosed. McGuin was anxious to avoid this foreclosure, and so was Mr. LaMoure, as such foreclosure would cut off his second mortgage, or make it necessary for him to redeem. He desired to avoid paying the costs of foreclosure of the $660 mortgage. So Mr. McGuin and Mr. LaMoure met, and talked over the situation. Mr. McGuin testifies as to this meeting as follows: "My first conversation was with Mr. LaMoure in the store at Neche, I think. I told him that Mr. Norton had made a proposition to me to pay my debts, and take a deed, and take half of the crop until it was paid,— until I paid off the debt, with 12 per cent interest. LaMoure said he would take it that way. I think that day and the day we made arrangements was the only time that I talked with Mr. LaMoure about the matter." As to what was said in the store on the day the deed was agreed upon, he said: "Why, Mr. LaMoure was to pay off what was against the places, and taxes, and he was to have a deed of the places, and I was to give him half of the crops. He was to have 12 per cent interest on his money. There was no conversation or agreement between us by which I was absolutely to convey either of these two quarter sections of land to Mr. Lee, or to Mr. LaMoure, or to LaMoure & Lee. They was to pay the taxes and everything, and he would keep the places for security until it would be paid." As to this meeting Mr. LaMoure testifies: "The result of the talk was that I agreed to take the places, and pay the indebtedness against the land; everything that was against the land I would pay, and did. The accounts of LaMoure & Co. against him were to be included in the whole business. Made a rough estimate of it here together, and I concluded it amounted to about $2,800; and I told him that was more than the land was worth; but I says, 'I can't afford to lose the $1,000 or $1,200.' After we got through talking, I went up with Mr. McGuin into the

store, and told Mr. Lee the agreement that we had made, which was that he was to deed me the land, and I was going to give him a lease of it that year under proper agreement; and he said it was pretty hard to be after losing his farm after working so hard. I told him there was nobody to blame but himself; but I says: 'Henry, I will tell you what I will do with you. I will give you a contract to deed you back this land this fall—this next winter, on the first of January following—for the amount I have put in it.' I got Mr. Lee to jot down the statement that I made, and it was read over to Mr. McGuin, and I says, 'That is the understanding, Henry,' and he says, 'Yes, sir.'" Mr. Lee, in his testimony as to this interview, corroborates Mr. LaMoure without any material variance. These three are the only witnesses that can testify as to what this agreement was. No others were present. Mr. McGuin's son testifies that Mr. Lee told him, in effect, in 1896, that this transaction was one for security only, but Mr. Lee positively denies having such conversation with the son. Mr. McGuin also testifies that Mr. LaMoure told him in 1897 that he should hurry up, and get his land back; but Mr. LaMoure denies such conversation. At the meeting in the store, when the memorandum was taken down for the purpose of having the papers drawn up, the total of the claims in favor of LaMoure & Lee, with the mortgage liens and taxes, was agreed to be $2,359.60. This did not include the $400 mortgage not yet due, but which was assumed by Mr. LaMoure in this agreement. It was also then agreed that the deed should be drawn in favor of Mr. Lee. The lease between Mr. Lee and Mr. McGuin for 1894 contains this special provision: "It is hereby further understood and agreed that, in the event of Henry McGuin paying to the said Joseph E. Lee the sum of two thousand three hundred and fifty-nine and no 100 dollars on or before the 1st day of January, A. D. 1895, then, and in such event, the said Joseph E. Lee agrees to sell to said Henry McGuin the land hereinbefore described, and to give him a warranty deed therefor; the understanding being that the said Henry McGuin will have the first chance to purchase said land for said price. And, in the event of said Henry McGuin failing and neglecting to purchase said land and paying said sum prior to January 1, 1895, then this lease to be void as to any sale or offer for sale of said land, but to be in full force and effect as to the lease and division of products of said farm, the understanding being that, in the event of said Henry McGuin failing to pay said sum prior to January 1st, 1895, that any offer for sale or agreement to sell is hereby considered to be void, and of no further virtue or effect, and that this agreement shall not be considered or held to be a contract for sale, but merely a lease of the land hereinbefore described." In 1895, 1896, 1897, and 1898, written leases were entered into between Mr. McGuin and Mr. Lee for the farming of the land by the former, but in neither of these years did the lease contain the special stipulation as to reconveying the land contained in the 1894 lease.

Settlements were made each year under each of these leases without a word being said by Mr. McGuin claiming or intimating that the deed was originally a mortgage; nothing said by him as to interest. If money was due Mr. McGuin under these settlements, he was credited with it on the books of Mr. Lee on store account or paid in cash, or his bill receivable paid, and not on the $2,359.60 consideration. If Mr. McGuin owed Mr. Lee on these settlements, he gave his note to him for such amount. Mr. Lee paid the taxes and kept the buildings insured during all these years, and these amounts were never considered or mentioned during these annual settlements. On February 13, 1899, Mr. McGuin wrote Mr. Lee as follows: "Dear Sir: I received yours of the 11th. Am very sorry that you have changed your mind about the places since I saw you, for I don't know where I can get a place at this time of year, for it takes quite a large stable to hold our stock. I wish you would change your mind, and let us have it this year, and give us longer time to look around. Please let us know, and oblige, yours, etc., H. McGuin." This letter was an answer to one sent him by Mr. Lee demanding possession of these farms.

The character of these two instruments, the deed and the lease, must be fixed by their own terms, considered in connection with the oral agreements, circumstances, and conduct of the parties at the time they were executed. What transpired prior to March 2d, or subsequent to the execution of these instruments, is to be weighed and considered for the purpose of aiding the court in ascertaining what the real intention of the parties was when these papers were executed. On March 2, 1894, we find Mr. McGuin in this condition: He was hopelessly in debt. His farms were heavily incumbered. One mortgage past due, on which foreclosure had been commenced. The other mortgages would be due in the coming fall. For two years his taxes had not been paid. Randall & Norton were pressing him. It does not appear, nor is it probable, that he could then procure a loan large enough to take up these pressing liens. From the outlook in March, 1894, it did not seem probable that he could secure the benefit of the crop of 1894, even if he could procure the seed in order to attempt to raise a crop. The defendants LaMoure & Lee offered him an opportunity by which he could receive the benefit of the crop of 1894 under a fair and reasonable arrangement by which he realized about $500 for his work during that season. By this arrangement LaMoure & Lee did not secure anything much better or different than they could have secured by other means. They had a second mortgage, and could have redeemed from the foreclosure of the prior mortgages, or procured assignments of them. By paying $1,318.13, practically in cash, they probably saved the $289.82, the unsecured indebtedness. We think the evidence of Henry McGuin is almost conclusively rebutted by that of LaMoure & Lee. The effort to weaken their testimony by showing that they have made statements inconsistent with the idea that there was a sale has failed. The defendants deny having made

such statements. We do not attach much importance to the fact that Mr. Lee, right after the deed was executed, wrote for an assignment, instead of a satisfaction, of the $660 mortgage. It seems to have been a mistake. Mr. Lee so states. The conduct of Mr. McGuin for nearly five years after the deed was given clearly indicates that he understood the deed to have been a sale. During all that time he dealt with Mr. Lee strictly in reference to crops; not a word in reference to paying any interest on the $2,759.60, concerning which he says he was to pay 12 per cent interest. When requested to quit the premises, he requested another year, that he might "look around for another place," and not a word in the letter that he considered the deed a mortgage. The conduct of Mr. Lee also shows clearly that the deed was intended as such. His bookkeeping shows it. His books show that the unsecured debts were canceled. The conduct of both Lee and McGuin shows directly that they both deemed the deed to have been nothing less than a sale, and that the debts, both secured and unsecured, were extinguished. True, the evidence of these liens was kept by Mr. Lee. Still he says that Mr. McGuin told him, upon being informed, that he could have them if he would call for them; told Lee "he could keep them." The $800 mortgage released by Mr. LaMoure when the $1,093.60 mortgage was given and called for by Mr. McGuin. The retention of these notes and satisfied mortgages by Mr. Lee under the circumstances has no controlling force with us to show that there was no extinguishment of this indebtedness. Trenholme's testimony to the effect that he figured on making a loan on this property, and figured on the amount of it with Mr. Lee, is relied on by plaintiffs as showing that Lee recognized McGuin's right to redeem subsequent to January 1, 1895. Mr. Trenholme's evidence on this point is very vague and uncertain in every respect. He says that the conversation was had "several years ago," and further says that the parts of such conversation claimed by plaintiffs to show inferentially that Lee recognized McGuin's right to redeem "may have been with McGuin." It is claimed that LaMoure & Lee were to receive interest on the consideration of the deed, and that stipulating for interest would be inconsistent with an extinguishment of the debt. That would be true if shown. In the first place, interest was never mentioned after March 2, 1894, not even by Mr. McGuin; none charged on Mr. Lee's books; none provided for in the special provision agreeing to reconvey on conditions in the first lease. Taken in its entirety, the testimony of Mr. LaMoure leads to the conclusion that nothing was meant to be said about interest during these negotiations, except a mention of interest on the money advanced to procure satisfaction of these mortgages as between Mr. LaMoure and Mr. Lee. In reviewing the whole evidence we find no facts or circumstances pertaining to the transactions that convince us that the lease containing the optional right of repurchase, or the oral evidence preliminary or subsequent to the deed, constituted the deed a mortgage. As we understand it, the evidence fairly considered,

shows that the intention of the parties was that it should be an absolute deed, and the indebtedness extinguished. After March 2d, it was not a loan. It had passed as such, and became an executed transaction, unless McGuin bought the land back by January 1, 1895. Having failed to do this his rights to the land passed from him under his deed joined in by the wife.

Appellants claim that, as to Mrs. McGuin, the deed must be held to be a mortgage, because the land in section 1 was her individual property, and that she never assented to the deed or lease. She did hold the title to this land in her name. It was given to her by her husband in 1884, "so that, if anything happened to him, she could have a place of her own." She never paid anything for it. Since that time the proceeds of this land have been used, just the same as the proceeds of the homestead have been used, for their mutual interests as husband and wife. But under the evidence we do not think it makes any difference in this case whether she knew of the lease, or authorized it, or assented to it or not. Nothing was ever said between Mrs. McGuin and these defendants as to either of these instruments, or any business relations between them and her husband leading up to the deed. She testifies that she signed this deed "to secure Mr. LaMoure." She does not state that she so stated to any one at the time of signing. That she signed to secure Mr. LaMoure is her present statement, that such was her intention then. She was asked what her husband told her when he talked with her about these matters? She says, "He told me he was going to have Jud fix it up," and she says he explained that "we will be so paying the debt by one-half crop payment." This was all that her husband said to her as to signing this deed. There is no evidence in the record tending to show that the defendants were ever informed, or had notice of any sort, that any such conversation had ever passed between her and her husband. It does not appear when her husband told her this,—whether before the conversation with Mr. LaMoure, or whether after such conversation, and before she signed the deed. She delivered the deed to the notary, who delivered it to Mr. Lee. She delivered it unconditionally after acknowledging it and informing the notary that she understood the nature of it. It is too late for her now to say that she signed the deed as security after delivering it under circumstances that led the defendants, LaMoure & Co. and others, to rely upon it as an absolute deed. She has failed to show by satisfactory and convincing evidence that she signed the deed as security. In view of all the evidence in the case, we think the contrary is shown. Having reached the conclusion that she signed and delivered the deed unconditionally, it is unnecessary for us to consider or discuss the question raised by counsel that her husband was not her authorized agent to execute the 1894 lease. We observe, in passing that the evidence strongly tends to negative the claim of counsel that she never knew of the leases or assented to them. In the first place, she does not testify that she did not know of them. For nearly five years the leases were in force. There

was an annual settlement under them between her husband and Lee. She admits that she was familiar with her husband's affairs. But it is unnecessary to discuss this phase of the evidence further, as she delivered the deed to the defendants, who could lease it to her husband without her sanction in any way. As bearing upon this question, see the following authorities: *Holmes* v. *Fresh,* 9 Mo. 201; *Wilson* v. *Parshall,* (N. Y. App.) 29 N. E. 297; *Phoenix* y. *Gardner,* 13 Minn. 430, (Gil. 396); *Wallace* v. *Smith,* (Pa. Sup.), 25 Atl. 807. The cases cited by appellant in support of his contention, viz:, *Ragan* v. *Simpson,* 27 Wis. 355, and *Gilbert* v. *Deshon,* 107 N. Y. 324, 14 N. E. 318, do not seem to us to be in point. In those cases the grantees in the deeds or conveyances had notice that the wife executed them as security, or for some special purpose.

It is claimed by plaintiff's counsel that the burden is on the defendants to show that these two instruments together constituted a sale of the land; in other words, that an agreement to reconvey on conditions, contemporaneously entered into with the deed, makes the transaction presumptively a mortgage. If such be the case, the effect is, that parties competent to contract cannot make their own contracts. We think the following lays down the most approved principle as to this question: "There can be no question that a party may make a purchase of lands, either in satisfaction of a precedent debt or for a consideration then paid, and may at the same time contract to recover the lands upon the payment of a certain sum, without any intention on the part of either party that the transaction should be, in effect, a mortgage. There is no absolute rule that the covenant to reconvey shall be regarded either in law or in equity as a defeasance. The covenant to reconvey, it is true, may be one fact, taken in connection with other facts, going to show that the parties really intended the deed to operate as a mortgage, but, standing alone, it is not sufficient to work that result. The owner of the land may be willing to sell at a price agreed upon, and the purchaser may also be willing to give his vendor the right to repurchase upon specified terms; and, if such appears to be the intention of the parties, it is not the duty of the court to attribute to them a different intention. Such a contract is not opposed to public policy, nor is it in any sense illegal, and courts will depart from the line of their duties should they, in disregard of the real intention of the parties, declare it to be a mortgage." *Henley* v. *Hotaling,* 41 Cal. 22. See, also, *Conway's Ex'rs* v. *Alexander,* 7 Cranch. 218, 3 L. Ed. 321; *McNamara* v. *Culver,* 22 Kan. 460. This court has clearly laid down the rule that governs in this class of cases as to the burden of proof. The rule thus laid down is: "Hence courts have, with great uniformity, in this class of cases, required the proof that should destroy the recitals in a solemn instrument to be clear, satisfactory, and specific, and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt." *Jasper* v. *Hazen,* 4 N. D. 1, 58 N. W. 454, 23 L. R. A. 58. See, also, *Larson* v. *Dutiel,* (S. D.) 85 N. W. 1008, and cases there cited.

It is claimed that the consideration for the deed was inadequate, and should be considered as a circumstance tending to prove that the deed and lease constituted together a mortgage. Were it proven that the consideration was grossly inadequate to the value of the land, it would not be sufficient alone to constitute it a security transaction. That would be considered as one fact to be weighed in connection with all the others in the case, from which to gather what the real intention of the parties was at the time of the execution of these papers. On the question of value the evidence is conflicting. Disinterested witnesses give widely divergent opinions as to such value in March, 1894. Such opinions range from $3,400 to $5,000. The defendant LaMoure estimates its value then at $2,500, and the defendant Lee offered to sell it to Norton in April, 1895, for what he had put into it. It is quite conclusively shown that the place in section 13 was of somewhat inferior character. After considering all the evidence on this question of value, we are far from convinced that the price paid was grossly or manifestly inadequate. Our conclusion is that the plaintiffs have failed to substantiate their claim by that clear, specific, satisfactory, and convincing proof required in this class of cases. It follows that the judgment of the District Court must be affirmed. All concur.