LIZZIE SMITH AND JAMES SMITH V. ANTON JENSEN AND STUTSMAN COUNTY BANK, PAUL KUNERT AND H. U. LAFRANTZ.

Opinion filed Dec. 13, 1907.

**Absolute Deed a Mortgage — Evidence.**

    1.  A deed, absolute in form, will be held to be a mortgage where the proof is clear, convincing, and satisfactory that such was the intention of the parties.

**Same.**

    2.  Where it is admitted that a deed absolute in form was not intended as an unconditional conveyance, but the controversy is as to whether the same was a mortgage or a conditional sale with the right to repurchase the property at or before a future date, the same will ordinarily be held to be a mere security transaction, and therefore a mortgage, where the true character of such transaction is left in doubt by the evidence.

**Same — Bona Fide Purchaser.**

    3.  Evidence in this case examined, and *held* to establish plaintiff's contention that the transaction was intended as a mortgage. Evidence also *held* to establish the fact that defendant bank took its deed from defendant Jensen with full knowledge of the rights of plaintiff Lizzie Smith to effect a redemption of said property.

**Same — Accounting — Redemption — Tender.**

    4.  In an action by a vendor to have a deed, absolute in form, adjudged a mortgage, and asking for an accounting and right to redeem, the amount of indebtedness and right to redeem being in dispute, it is unnecessary for plaintiff to allege or prove a tender to defendant of any sum prior to the commencement of the action; it being sufficient for plaintiff to allege and prove a willingness to redeem by paying such sum as may be adjudged to be due and owing by him to defendant.

**Same.**

    5.  The evidence as to the amount of the indebtedness existing after deducting the net amount of the rents and profits being vague and un-

certain, the district court is directed to take an account of these matters, and upon determining such sum to enter judgment in accordance with the opinion.

Appeal from district court, Stutsman county; BURKE, Judge.

Action by Lizzie Smith and James Smith against Anton Jensen and the Stutsman County Bank. Judgment for plaintiffs, and defendants appeal.

Modified.

*J. A. Coffey, W. O. Lowden* and *S. E. Ellsworth,* for appellants.

Proofs to determine a deed to be a mortgage must be clear, specific and satisfactory. Jasper v. Hazen, 4 N. D. 1, 58 N. W. 454; Little v. Braun, 11 N. D. 410, 92 N. W. 800; Sargent v. Cooley, 12 N. D. 1, 94 N. W. 576.

A sale, with a covenant to reconvey, may differ from a mortgage. Henley v. Hotaling, 41 Cal. 22; Conway's Ex'rs v. Alexander, 7 Cranch. 218; McGuin v. Lee, 10 N. D. 160, 86 N. W. 714; Knight v. McCord, 19 N. W. 310.

To obtain a reconveyance plaintiff must tender what he agreed to pay. Merchants State Bank of Fargo v. Tufts, 14 N. D. 238, 103 N. W. 760.

*Parks & Olsberg,* for respondents.

Circumstances of parties may be considered in determining the transaction. Wells v. Geyer, 12 N. D. 316, 96 N. W. 289; O'Toole v. Omlie, 8 N. D. 444, 79 N. W. 849; Merchants State Bank of Fargo v. Tufts, 14 N. D. 238, 103 N. W. 760; State Bank of O'Neil v. Mathews, 63 N. W. 930; Fahay v. State Bank of O'Neil, 95 N. W. 505; Tower v. Fetz, 42 N. W. 884; Nelson v. Atkinson, 56 N. W. 313; Niggeler v. Maurin, 24 N. W. 369; Dembitz on Land Titles, p. 726, article 96; Beebe v. Wisconsin Mortgage Loan Co., 93 N. W. 1103.

FISK, J. This litigation arose in the district court of Stutsman county, and the case is here for trial de novo. The object of the suit is to have a certain deed, absolute in form, adjudged a mortgage, and for an accounting as to the amount due thereon after deducting the value of certain rents and profits of the premises, collected by the defendant. The issues were tried in the court

below in January, 1906, and in May following the trial court made findings of fact and conclusions of law in favor of the plaintiffs and thereafter judgment was rendered thereon, from which this appeal was taken.

Certain facts are not in dispute. It is conceded that the plaintiff Lizzie Smith was on the 24th day of February, 1904, the owner in fee of the premises in controversy, being lot 13, block 11, of Randall's addition to the village of Kensal, in Stutsman county, and that on said date the plaintiffs Lizzie Smith and her husband, James Smith, executed and delivered to the defendant Jensen a deed of conveyance to said premises, absolute in form, and contemporaneously therewith a contract was entered into between the parties, by the terms of which Jensen agreed to reconvey said premises to Lizzie Smith upon the payment on or before September 1st, thereafter of the sum of $600. It is also undisputed that such payment was not made or tendered on or prior to said date, and that thereafter, and on October 22, 1904, Jensen, in consideration of the sum of $710, executed and delivered to the defendant Stutsman County Bank an absolute deed of conveyance to said premises. Briefly stated, the contentions of the various parties were and are as follows: Plaintiffs assert that the deed from them to Jensen was executed and delivered merely for the purpose of securing an indebtedness due by them to Jensen, amounting to about $540, and that the defendant bank took this deed from Jensen with full knowledge that the deed from plaintiffs to Jensen was a mere security transaction. Defendant Jensen asserts that the deed from plaintiffs to him was intended to be and was an absolute conveyance, and not a mortgage, and that the agreement entered into between them was an independent contract, whereby he agreed to sell to plaintiffs the premises for the consideration of $600, provided plaintiffs made payment of such sum on or before September 1st. He also contends that the defendant bank purchased the premises from him without notice of plaintiff's rights. The defendant bank's contention is practically the same as that of Mr. Jensen. Defendant La Frantz did not appear in the action, and defendant Kunert disclaims any interest in the premises in controversy. Certain other facts are in dispute, relative to the value of the premises and the rents and profits thereof, which will be hereafter noticed. The findings and conclusions of the trial court are substantially in accord with the plaintiffs' contentions. Among other things, that

court found that the deed in question was merely intended as security for the payment of the sum of $540, which sum had not been paid; that Jensen in the month of October, 1904, in consideration of $710, executed and delivered to defendant bank a deed of conveyance to said property, such bank taking the same, however, with full knowledge of plaintiffs' rights; that since October 22, 1904, defendant bank has assumed and exercised control of said premises, to the exclusion of plaintiffs and has retained the rents and profits thereof; and that the value of said premises is $2,000, and that the rental value thereof is $15 per month. As conclusions of law the court found that the deed from plaintiffs to Jensen was merely a mortgage securing the payment to him of $540 and interest; that the deed from Jensen to defendant bank was taken with full notice of plaintiff Lizzie Smith's interest in the property, and in equity operated as an assignment merely of such mortgage and the indebtedness thus secured thereby, and that the plaintiffs are indebted to the defendant bank in the sum of $540, with interest at the rate of 7 per cent per annum from February 24, 1904, less the rental value of said premises since the 22d day of October, 1904, at $15 per month, and the costs of this action, to be taxed by the clerk. It was, among other things, in effect adjudged that defendent bank execute and deliver to plaintiff Lizzie Smith a deed of conveyance of the property within ninety days after the date of the judgment upon payment or tender by plaintiffs of the sum of $540, with interest at the rate of 7 per cent from February 24, 1904, amounting to $625, less $278, the rental value of the property and $45 costs. It was further adjudged that the failure of plaintiffs or either or them to pay or tender such sum within the time aforesaid should operate to forever debar them of any right, title or interest in said premises, and vest the same in defendant bank. The rules of law applicable to the case are well settled, and there is no serious disagreement thereon between counsel.

This court in McGuin v. Lee, 10 N. D. 160, 86 N. W. 1714, quoted with approval the following rule: "There can be no question that a party may make a purchase of lands, either in satisfaction of a precedent debt or for a consideration then paid, and may at the same time contract to reconvey the lands upon the payment of a certain sum, without any intention on the part of either party that the transaction should be, in effect, a mortgage. There is no absolute

rule that the covenant to reconvey should be regarded, either in law or in equity, as a defeasance. The covenant to reconvey, it is true, may be one fact, taken in connection with other facts, going to show that the parties really intended the deed to operate as a mortgage, but standing alone it is not sufficient to work that result. The owner of the land may be willing to sell at the price agreed upon, and the purchaser may also be willing to give his vendor the right to repurchase upon specified terms; and, if such appears to be the intention of the parties, it is not the duty of the court to attribute to them a different intention. Such a contract is not opposed to public policy, nor is it in any sense illegal, and courts will depart from the line of their duty should they, in disregard of the real intention of the parties, declare it to be a mortgage"—citing Henley v. Hotaling, 41 Cal. 22; Conway's Ex'rs v. Alexander, 7 Cranch (U. S.) 218, 3 L. Ed. 321; McNamara v. Culver, 22 Kan. 661.

As to the burden of proof, it is also well settled by this court that, in order to destroy the recitals in a deed or other contract, the proof must be clear, strong and convincing, "and of such a character as to leave in the mind of the chancellor no hesitation or substantial doubt." Jasper v. Hazen, 4 N. D. 1, 58 N. W. 454, 23 L. R. A. 58; McGuin v. Lee, 10 N. D. 160, 86 N. W. 714; Wells v. Geyer, 12 N. D. 316, 96 N. W. 289.

The following rules are statutory in this state:

"Sec. 6151. Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act is to be deemed a mortgage, except when in the case of personal property, it is accompanied by an actual change of possession in which case it is deemed a pledge."

"Sec. 6153. The fact that a transfer was made subject to a defeasance on a condition may, for the purpose of showing such transfer to be a mortgage, be proved, except as against a subsequent purchaser or incumbrancer for value and without notice, though the fact does not appear by the terms of the instrument." Rev. Civ. Code 1905.

It goes without saying that before the grantors in a deed, intended as mere security, can compel a reconveyance, they must pay or tender all the indebtedness due the grantee or his assignee according to the terms of the agreement for such reconveyance. In other words, before such equitable relief will be extended to such

grantors, they must bring themselves within the recognized doctrine of equity jurisprudence that he who seeks equity must first do or offer to do equity. This rule is too well settled to require the citation of authorities in its support. See, however, Bank v. Tufts et al., 14 N. D. 238, 103 N. W. 706, 116 Am. St. Rep. 682, and cases cited; also 2 Current Law, pp. 911-912.

With the foregoing rules in mind, we have carefully examined the testimony in the case at bar and have reached the same conclusion is that arrived at by the trial court, except as to certain findings and conclusions which we will hereafter notice. Upon the principal question of fact in dispute, which is as to whether the deed from plaintiffs to Jensen was an absolute conveyance or merely a mortgage, we entertain no doubt that the same was intended as a mortgage merely. The evidence is clear and convincing that such was the intention of the parties. Both plaintiffs testified positively to this effect, and their testimony is fully corroborated by the other evidence in the record. The testimony is too voluminous to warrant a full statement thereof in this opinion, but we will briefly review the same. The testimony was undisputed that the Smiths were indebted to Jensen in a sum between $500 and $600, and that Jensen had caused their personal property to be attached in an action instituted by him against them to recover such indebtedness, and for the purpose of procuring a release of such attachment the deed in question was given. At the time of executing this deed the exact amount of such indebtedness was not known, but it was considered that such indebtedness, including the costs of the attachment suit, would reach the sum of about $600. It was agreed that, if it was less than that amount, the Smiths would be given credit at Jensen's store for the balance. The consideration mentioned in the deed was therefore fixed at $600. Immediately after executing the deed, but as a part of the same transaction, a written agreement was executed by Jensen, whereby he agreed to reconvey the premises to Lizzie Smith upon the payment by plaintiffs or either of them to him of $600 on or before September 1st following. It does not appear that any negotiations had been carried on between these parties prior to the date such deed was executed with reference to the sale and purchase of the property. This in itself is very significant. At the date the alleged sale was made the property was worth a much larger sum than $600, the testimony being somewhat conflicting as to such

value, but a fair valuation, as shown by the testimony, is $1,500. In addition to these facts, it appears that the Smiths for a period of about eight months after the deed was executed had the same care and management of the property as they exercised prior thereto. Regarding the character of the deed and contract, the plaintiff Lizzie Smith testified, among other things, as follows: "Q. Do you know whether or not you were indebted to Mr. Jensen on the 24th of February, 1904? A. Yes sir; we were. Q. How, or in what way, did you pay or satisfy that indebtedness about that time? A. We secured him with that building in Kensal [meaning the property in question]. Q. You say you secured the payment of that debt with that building. How did you do that Mrs. Smith? A. Mr. Jensen claimed that we owed him between $500 and $600 of a store bill, and he attached our stock, and we secured him with this building to leave the stock. Q. Do you know what kind of an instrument you gave Mr. Jensen at that time? A. He was to assign the property to me when his pay was forwarded to him. Q. When you paid the $500 or $600 you owed him? A. Yes, sir." When questioned regarding the contract to reconvey the premises, the witness stated: "I don't know anything further than he was to give back the deed; whenever he got the $600 forwarded to him, he was to give me back the deed. Q. Have you ever received any other consideration from Mr. Jensen for this property? A. No, sir." The plaintiff James Smith testified: "Q. And you were some indebted to him at that time? A. Yes. Q. On the 24th day of February, 1904? A. Yes, sir. Q. State what Mr. Jensen did towards the collection of that claim that he had against you during the winter of 1904. A. He came there and attached our stuff, and I went to see him, and she—the woman here—and we agreed to give him this building to release that stock to secure him for the store bill until the following fall, and he was to give that building back as soon as we paid him between $500 and $600, and he said he didn't know how much the costs would be at that time, but as soon as we paid that money back he would give us the deed back. Q. Do you know whether or not there was a written instrument to that effect at the time the deed was given? A. There was some kind of a writing, but I am no scholar, and I couldn't tell what it was. Q. At the time you and your wife deeded him this building as security, you relied upon his statements that he would return it upon the payment of this $600? A. Yes, sir." De-

fendant Jensen testified: That at the time the deed was executed the Smiths were indebted to him in a sum between $550 and $600 for goods purchased from him, and the costs of the attachment suit, and that the $600 mentioned as the consideration in the deed was intended to cover such indebtedness. "Q. At or about the time the conveyance was made, was anything said between you and Mr. and Mrs. Smith with reference to a reconveyance to them of the property? A. There was an option with them to repurchase the property on or before September 1st. Q. Was an understanding or an agreement to that effect made by you on the one part and Mrs. Smith on the other at the time the deed was executed, on the same day? A. Yes, sir. After the deed was executed, this deal was entered into. Q. You at that time agreed to reconvey the property to them on the payment of $600? A. Yes, sir. Q. What was the agreement in case the payment was not made by September 1st? A. The property was to be mine absolutely. Q. Did Mr. Smith come down and talk to you about it [referring to the attachment suit], and try to get some kind of a settlement? A. No; they were never there until the day the papers were made. Q. Didn't they try to get a settlement? A. Yes, sir. Q. Did they that day tell you that they would give you the house and lot, and call the deal square? A. No; I can't recall they did. Q. When Mr. and Mrs. Smith came down on that day, did they tell you they were willing to give you that house and lot to settle that deal? A. Not in those express words. They were willing to give me a deed for the house and lot. Q. For what? A. For what they owed me. Q. And call everything square? A. No, sir. They didn't say that. Q. What did they say? A. After the papers were made out, they wanted option to— Q. Where did you get that word 'option'? Did they talk about options? A. No, but they wanted— Q. I want to know what they said. A. I don't remember. Q. They didn't say 'option,' did they? A. No. Q. You learned that somewhere else? A. That is the way I would express it. Q. What does that word mean? A. My meaning is that it is a privilege. Q. Of what in this case? A. A privilege of them to buy that property back. Q. Simply a privilege to redeem it, was it? A. If you want it that way. I don't know as that would hardly express it. Q. Did Mr. Smith say he wanted an option to get that property back by the payment of $600? A. No; I think Mrs. Smith said that. Q. In your answer you admit that

on the 24th day of February, 1904, plaintiffs executed and delivered a deed of conveyance of the premises to this defendant; that contemporaneously with the execution and delivery of said deed, that is at the same time and place you entered into an agreement with plaintiffs, under the terms of which you agreed upon the payment of the sum of $600 to redeed to plaintiffs the said real property; that is true, is it? A. I said that before, haven't I? Q. I don't knew whether you did or not. Is that true? A. It is true I promised to redeed that property upon the payment of $600. Q. Now, Mr. Jensen, how did you arrive at the sum of $600 being the amount she should repay you to get that deed back, and how did you arrive at the exact amount due you? A. I didn't arrive at any exact amount, because I didn't have the bill of these costs at that time, but I though $600 would cover what they owed me. Q. You were willing to let him have some goods, too, at the same time? A. I said, if that was more than my debt, they could trade the balance out. Q. How much did you demand that they owed you at any time since the conveyance of the property? A. A little over $600, I guess. They got some goods from me that same time. Q. You were holding this real estate, and you intended, if he redeemed this, you intended he should pay you back what he owned you at the time and all costs of this action, and what he traded out? A. I always thought he would pay his honest debts. Q. Answer the question yes or no. You expected him to pay all of it at the time he redeemed? A. I guess I did. Q. You know you did, don't you? A. Yes; he agreed to. Q. In that written instrument you agreed to reconvey to him upon payment of $600, did you, that lot 13, block 11, Randall's addition to Kensal, N. D. A. Yes, sir. Q. Payment to be made in the fall of 1904? A. It was before September 1st or on September 1st. Q. With interest? A. Yes, sir. Q. She was to pay interest, too? A. Yes, sir. I think it was. I am not certain of that, though. Q. With reference to this agreement by which you were to reconvey on payment of $600, did that have any reference whatever to the amount that the Smiths owed you before that time? Was it intended to cover what they owed you, or was it simply a sum you agreed upon for which you were willing to reconvey the property to them at that time? A. I set that sum of $600 because I thought that would cover the indebtedness of the Smiths to me. Q. And they agreed to that sum? A. Yes, sir. Q. You considered, then, and

knew all the time, did you not, that these people, Mrs. Smith and her husband, had a right to redeem that any time before or on the 1st day of September, and take a reconveyance? A. Yes; I understood they had a right to take a reconveyance." The witness Lowden, who was attorney for defendants Jensen and the bank, testified that the deed and contract were executed in his office, and that it was understood that, by payment of $600 by Mrs. Smith, Mr. Jensen would redeem the property at any time on or before September 1st, but he says this agreement to reconvey was made after the deed was executed and delivered. In this he is not corroborated even by the testimony of Mr. Jensen. The latter's testimony merely tends to show that the contract to reconvey was made after the execution of the deed. We think we are fully warranted under the evidence in holding, as we do, that this contract was entered into simultaneously with the execution and delivery of the deed and was a part of that transaction. Upon cross-examination this witness fully supports this theory. He was asked the following question: "Immediately after that, and contemporaneously with it, as they have pleaded, they made another agreement whereby he was to reconvey that to them if they paid him back the $600?" to which he answered "Yes." "Q. Didn't you think it a little strange if they made an absolute trade to then make another one contradicting it absolutely? A. I didn't think anything about it. Q. You know as a matter of fact they did make an instrument there at the same time and the same day, and a part of the same transaction, to reconvey that property upon payment of $600? A. Yes, sir. Q. You knew, though, as a matter of fact, that she wanted the property back upon the payment of the $600, didn't you? A. I did after they talked that matter over. Q. And there was a written instrument drawn to that effect? A. Yes; but before that I thought they were going to absolutely deed." It is therefore perfectly apparent, not only from the testimony of the plaintiffs and the strong circumstantial evidence in corroboration of their testimony, but also from the testimony of the defendant Jensen and his attorney, that this was a mere security transaction.

The facts are similar to those in the recent case of Rose v. Gandy, 137 Ala. 329, 34 South. 239, cited in 2 Current Law, 912, wherein it was said: "It will be observed that the case is not one involving the issue whether the conveyances were intended as mortgages or unconditional sales. It is whether from the understanding between

the parties the complainant should have the right to repurchase or to redeem. In other words, whether the deeds were intended as mortgages or conditional sales. It is important that this distinction should not be lost sight of, since the degree of proof required is different; for, when the conveyance is absolute and the controversy is whether the parties contemplated an unconditional sale or a mortgage, the party claiming that it was intended as a mortgage must show by clear and convincing evidence that at the time of its execution it was intended and understood by both parties that it should operate only as a security for a debt. But, where the writings must be departed from in order to ascertain the true transaction between the parties, the rule is not so stringent. While the complainant in the latter case is not relieved of the burden of proving his case, yet the court will be inclined to favor the right of redemption, and therefore to consider the transaction as a mortgage; 'for by this construction complete justice can be done to both parties. The mortgagee is secured in the payment of the money he may have loaned or advanced with its accruing interest, and the mortgagor is protected in his equity of redemption; while if the other construction was adopted, the time limited for the repurchase must be precisely observed or the right to reclaim the property is irretrievably lost. Oppression could be exercised over the needy, and undue advantage taken of their distressed or embarrassed circumstances.' "

It follows as a necessary conclusion that plaintiff Lizzie Smith on the payment or tender of the amount of the indebtedness secured thereby is entitled to a reconveyance of the property, unless the defendant bank purchased the same from Jensen in good faith and without knowledge of the character of the deed aforesaid. The trial court found that the bank had knowledge sufficient to apprise them of the real character of the transaction, and we think this finding was fully warranted by the evidence. Upon this point defendant Jensen testified that at the time he gave the deed to the bank he talked with Mr. Sinclair, the officer of the bank who negotiated the deal, and told him all about the deal. He testified as follows: "Q. Did you tell him anything about the deal you had with Mrs. Smith? A. I think I told him about how Mrs. Smith had a chance to buy that property back for a consideration of $600. Q. You told him there was a written instrument to that effect? A. I think I told him that. Q. You talked about Mrs. Smith with

Mr. Sinclair—about the property and about the dealings? A. Yes; we talked about it. I told him she had a right to purchase that property back for $600 before September 1st. Q. You told him all about the deal as you understood it, did you? A. I told him what I knew. Q. If Mr. Sinclair says you didn't tell him anything about that deal at all, he does not tell the truth at all? A. I don't know how good his memory is." It is true the witness Sinclair disputes this testimony, but we are not disposed to find the fact contrary to the findings of the trial court, as he had an opportunity to see the witnesses upon the stand and was better able to judge of their credibility than we are. The deed, therefore, from Jensen to the bank merely operated as an equitable assignment of Jensen's equitable mortgage and the indebtedness secured thereby, and the trial court correctly held that upon the payment or tender of such indebtedness the defendant bank should execute and deliver to the plaintiff Lizzie Smith a deed reconveying said premises. Through an evident oversight, however, the judgment provides that a failure to pay or tender such indebtedness within ninety days from the date of the judgment should operate to debar plaintiffs of any interest in the property, and vest the absolute title in the bank. The transaction constituted merely a mortgage and plaintiff cannot be divested of her ownership against her will, except through foreclosure proceedings, and the judgment will therefore be modified by eliminating therefrom the provision aforesaid.

It is urged by appellants' counsel that plaintiffs have no standing in a court of equity by reason of delay in asserting their rights, and also because they have not paid or tendered to defendant bank the indebtedness secured by such deed. We think such contention without merit. It was unnecessary to pay or tender such indebtedness prior to the commencement of the action. The sum necessary to effect a redemption as well as plaintiff's right to redeem were in dispute, and it was therefore only necessary for plaintiffs in their complaint to offer to do equity by alleging their willingness to pay such sum as may be found due. The rule is as stated in 2 Current Law, 911, and cases cited, "that to maintain an action to have an absolute conveyance declared a mortgage, the plaintiff must offer to redeem. Mack v. Hill, 28 Mont. 99, 72 Pac. 307. But tender need not be made prior to commencing suit. Reese v. Rhodes, 3 Ariz. 235, 73 Pac. 446; DeLeonis v. Walsh,

140 Cal. 175, 73 Pac. 813." In the latter case it was said: "Where defendant denies that he holds as a mortgagee and claims the property as his own, while the amount of the indebtedness secured is also in dispute, an action may be maintained without any previous offer or payment. The judgment should be for a reconveyance on the payment by plaintiff of any balance found due."

The judgment appealed from in so far as it adjudges that said deed is merely a mortgage, and that plaintiff Lizzie Smith is entitled to a reconveyance of the premises upon payment of the net amount due to the bank, was correct and is affirmed; but, in view of the state of the record, this court is unable to determine with any degree of certainty the equitable sum which plaintiffs should be required to pay to entitle the plaintiff Lizzie Smith to a reconveyance of the property. We have therefore concluded to leave this branch of the case open for further adjudication by the trial court. That court is directed to take an account between the parties for the purpose of determining the correct amount of the indebtedness secured by said deed, including interest at 7 per cent per annum, from February 24, 1904, which is due from the plaintiffs to the defendant bank as equitable assignee thereof, and also for the purpose of determining the amount of rents and profits actually received by defendant bank from the property aforesaid, with interest, after deducting therefrom such sums, if any, as the defendant bank or its assignor, Jensen, may have properly paid out or expended for taxes, insurance and repairs, or for the discharge of valid liens thereon, and after deducting the net amount, if any, of such rents and profits from the total amount of such indebtedness, that court is directed to enter judgment in conformity with the foregoing opinion, no costs to be allowed either party on this appeal. All concur.