# TRUCKS v. LINDSEY et al.

1. **Evidence:** MORTGAGE. Parol evidence is admissible and competent to show that a deed absolute on its face was executed as a mortgage.

2. **Mortgage:** REDEMPTION. It is a rule in equity that a right of redemption necessarily and conclusively attaches to every grant made as a security.

3. —— CONDITIONAL SALES. But it is competent for parties to make a purchase and sale of lands with a reservation to the vendor of a right to repurchase the same land within a given time at an agreed price.

4. —— DOUBTFUL CASES. Where it is doubtful whether a transaction was a conditional sale or mortgage, a court of equity will treat it as a mortgage.

*Appeal from Scott District Court.*

## THURSDAY, JUNE 8.

THIS is a suit in equity, seeking to show that a deed, absolute on its face, was intended as a mortgage, and to redeem from it as such. The further necessary facts will be found stated in the opinion. The defendants appeal.

*Grant & Smith* for the appellants.

*Daniel L. Shorey* for the appellee.

COLE, J. — A conveyance absolute on its face may, by proper evidence, be shown to be but a mortgage, and parol testimony is admissible and competent to establish such fact. The parol testimony in such cases is received upon a principle, not in conflict with the well known and settled rule of evidence, that "parol, contemporaneous evidence is inadmissible to contradict or vary the terms of a valid, written instrument." Such testimony is received to establish facts and circumstances, independent of the deed itself, and to which facts and circumstances, in connection with the deed, the rules of equity inseparably attach the right of redemption.

It is a rule of equity that the right to redeem attaches

2. MORT- necessarily and conclusively to every grant made
GAGE: re-
demption. as a security. In other words, equity forbids an irredeemable mortgage. The right to redeem, therefore, is independent of the agreement of the parties, and rests upon this rule of equity, which is itself founded upon considerations of public policy, paramount to the intentions of the parties or the form of instrument adopted by them. While, therefore, parol evidence is inadmissible to contradict or vary the terms of a deed, it is admissible for the purpose of establishing an equity apart from it.

This rule of equity, which attaches the right of redemption to every grant made as a security, does not in the

3. —— least interfere with the right or power of persons
conditional
sale. to make a conditional sale. It is, therefore, competent for parties to make a purchase and sale of lands, with a reservation to the vendor of a right to repurchase the same land within a given time, at an agreed price. A resort, however, to a formal conditional sale, as a device to

4. —— defeat the equity of redemption, will, of course,
doubtful
cases. when shown, be unavailing for that purpose. And the possibility of such resort, together with other considerations, has driven courts of equity to adopt, as a rule, that, when it is doubtful whether the transaction is a conditional sale or a mortgage, it will be held to be the latter. Leading Cases in Eq., 624–643, and authorities cited.

In this case, the plaintiff claims that the absolute deed was but a mortgage, while the defendants insist that it was a conditional sale. This question is the only one presented for our determination, for there is no controversy as to the rights which attach to the respective contracts. We are relieved of some doubts which might otherwise be involved in the case, by the fact that neither party con-

tends that the deed itself embraces the entire contract of the parties.

The plaintiff was the owner of one hundred and sixty acres of land in Scott county, eighty acres of which had been sold by the sheriff under execution, subject to redemption, and the balance had been conveyed in trust to secure another debt, and was about to be sold for its payment. The amount of money requisite to redeem from the sale and discharge the trust deed, was thirteen hundred and eighty dollars. The plaintiff obtained this sum from the defendant, James Lindsey, on the thirteenth day of November, 1860, and gave his *due-bill* therefor to the defendant, Catharine E. Lindsey, his wife, with ten per cent interest per annum, which defendants still hold. With this money he discharged the incumbrances on his land, and on the 18th day of December, 1860, conveyed the land by absolute deed, with covenants of warranty, to the defendant, Catharine.

The plaintiff continued in possession and cultivation of the land up to the bringing of this suit. On the 17th day of March, 1863, he executed a lease of the land for one year, purporting to be between the defendant, Catharine, and himself, but signed only by him, whereby he covenanted to keep in repair and cultivate the premises, to pay one-third in kind for rent, and to let the defendant enter upon the premises after harvest, to plow, sow and make improvements. The plaintiff paid to the defendants the one-third of the crops raised on the premises in the year 1863. The plaintiff paid to defendants, about a year after the deed was made, a promissory note on a Mr. Stiles, for one hundred and sixty-five dollars, about thirty dollars in money and some pork.

The plaintiff paid the taxes after the deed was made. The defendant, James Lindsey, frequently asked the plaintiff for the repayment of the money advanced to him, and

continued to do so up to near the time of the commencement of this suit. These are, mainly, the uncontroverted facts of the case.

The defendant, James Lindsey, swears that plaintiff wanted to borrow the money of him, but he refused to loan it, and offered to buy the land, and did buy it, for the consideration named. He further testifies, that " Trucks and I agreed that, when I wanted my money, if I did not get it on ten days' notice, the land was to be mine, and there should be no hard feeling about it;" that nothing was said about security; that the note ought to have been given up, and he claimed nothing upon it; that the note on Stiles, the thirty dollars and the pork, were all paid on rent; that he notified plaintiff to pay the money about a year after he let him have it. All these statements are denied by the plaintiff in his testimony, and there is no other proof as to them.

Aside from the testimony of the parties, there is but one witness to any material fact, and he testifies that, being applied to by the plaintiff for money with which to pay the defendant, he called upon James Lindsey to ascertain the amount due him. The defendant said that plaintiff had borrowed gold and agreed to pay gold, and now he wanted to pay greenbacks, but finally said he would take one thousand dollars in gold and the rest in greenbacks, but did not state what the balance was, because he had not figured it. This was in the fall of 1863, and in January, 1864.

The defendant, James Lindsey, also testified that, in 1863, "I think we had a talk about the taxes; I told him that as long as I was waiting on him that he should pay the taxes;" and that in 1864 he had a talk with the plaintiff, and asked him what show there was for raising the money, and offered to take eight hundred dollars in gold and the balance in greenbacks, and told him that he must have his money.

In support of the claim and theory of the defendants, there is the deed, the lease, and the payment of the rent.

These are abundantly sufficient to show the absolute ownership of the property, unless it is made clearly to appear that the deed was executed as security for a loan.

The taking and holding of the note of the plaintiff for the money advanced is a fact and action inconsistent with the idea of an absolute purchase. This fact, however, is sought to be obviated by the defendants by showing that the plaintiff could not, at the time the money was advanced, make a title to the property, because of the incumbrances upon it, and the note was taken to show the amount of money advanced. But how unnatural and unusual such a writing for such a purpose. If the parties were going to execute any writing, to evidence their contract, how much more natural, reasonable and truthful would it have been to execute a receipt for the money in payment for the land, for which a deed was to be made on removing the incumbrance. But the due-bill specifies that the money was to draw interest, at ten per cent. If the money was in absolute payment for the property, why does the vendor, when receiving it as his own, stipulate to pay interest on it? And, again, when the deed was made, why was not the note surrendered? The *fact* of executing the due-bill, bearing interest, and the *action* in retaining it by the payee, are inconsistent with the idea of sale and purchase, and consistent only with a *loan.* The repeated requests for the repayment of the money; the declaration of defendant, testified to by himself, that he told plaintiff that, as long as he was waiting on him, plaintiff should pay the taxes; the demand by defendant, as testified to by him, that, since he had let plaintiff have gold, he should have gold in return; that he would take eight hundred dollars in gold, and *the balance in greenbacks;* and the statement, made by defendant to plaintiff's witness, Mr. Dow, that Trucks had *borrowed*

gold, and agreed to pay gold, and the same statement, in substance, repeated to the same witness, a few months afterwards, and only a short time before the commencement of this suit, are all uncontroverted facts and declarations, and are wholly inconsistent with any other idea than that of a *loan*.

And, again, the amount of money received by the plaintiff was just equal to the incumbrances upon the property; and, therefore, no probable advantage would be gained by a sale to defendant for that sum, showing the absence of any motive for such an act.

Under all the circumstances of this case, we have no hesitation in holding that the judgment below should be

Affirmed.