ANDREW HAWES, Admr., in Equity,

*vs.*

HIRAM B. WILLIAMS, Admr., and others.

Somerset.    Opinion February 20, 1899.

*Equitable Mortgage.    Distribution.    Equity.    Probate.    Costs.    R. S., c. 65,*
*§§ 32, 33, 35; c. 90, § 12.*

A conveyance of land in fee, with an agreement in writing from the grantee to the grantor that, upon payment by the grantor to the grantee of a sum of money at a stated time, the grantee shall reconvey the land, and that the grantor may occupy the premises so long as he fulfill his part of the agreement, but that upon breach of any part of it he should forfeit all right to the land and money paid on account of it as well, creates an equitable mortgage.

R. S., chap. 90, § 12, relative to "land mortgaged" applies both to legal and equitable mortgages.

Equitable mortgages, where there is no evidence of a debt from the mortgagor that can be enforced at law, independent of the security, may well be inventoried as real estate, and only when reduced to cash by redemption or sale, would the proceeds become chargeable to the executor or administrator.

*Held;* in this case, that the money received by the administrator of an equitable mortgagee, in redemption of an equitable mortgage, should be charged by the probate court to the administrator and ordered distributed as personal estate.    That court only having jurisdiction, a bill in equity, therefore, cannot be maintained; but the defendants, who detain assets to which they are not entitled, should not recover costs.

ON REPORT.

Bill in equity, heard on bill, answers and proof, brought for the recovery of $509.16, and interest alleged to be wrongfully diverted from the estate and heirs of Emeline Williams.

The material facts are as follows: —

October 9, 1888, Ira W. Page obtained from Lawrence Williams, since deceased, fifteen hundred dollars, and gave the latter an absolute deed of a lot of land and buildings in Hartland, taking back a written agreement, which was not sealed or acknowledged and not recorded, to convey the same premises by quitclaim deed to said Page if the latter paid him or his legal representatives fif-

teen dollars per month,—with the option of paying more and oftener,—until he should have paid fifteen hundred dollars with interest monthly on the same, and should pay all taxes and insurance on the premises, which he was meantime to occupy. The agreement provided that in case of failure on the part of Page to pay as stipulated the sums paid were to go as rent and his rights of occupancy and to a deed were to be forfeited. This agreement is as follows:

"Hartland, October 9th, 1888.

If Ira W. Page or his legal representatives shall pay or cause to be paid to me or my legal representatives fifteen dollars per month until he shall have paid fifteen hundred dollars with interest monthly on the same, and pay all taxes and insurances on the buildings and lot in Hartland village that he has this day deeded to me, keep said buildings in good repair I hereby bind myself my heirs and assigns to give him his heirs or assigns a quitclaim deed of said premises—the first payment to be made this day and a payment of fifteen dollars on or before the same day of each succeeding month until the above named sum and interest shall be fully paid. It is also agreed and understood that said Page has the right to pay larger sums and oftener if he chooses to. But all payments for the purpose of reckoning interest will be considered as if paid at the end of each year. I also agree that said Page shall occupy and have the use of said premises so long as he performs the above conditions and no longer and if he fails to perform all of said conditions the sums that may have been paid are to go as rent and thereby forfeits all claim to a deed or right to occupy said premises.

Lawrence Williams."

Page made his payments regularly to Lawrence Williams during the latter's life and after his decease to Hiram B. Williams, the administrator and one of the defendants. He also paid the taxes and insurance and never forfeited any of his rights under the terms of said agreement.

When Lawrence Williams died, intestate, March 22, 1893, Page had paid eight hundred and ten dollars. Then he paid Hiram B.

Williams installments amounting to one hundred and fifty dollars; and finally the balance of said fifteen hundred dollars and interest, to wit, eight hundred and sixty-eight dollars and thirty-two cents, was paid to said Hiram B. Williams about June 13, 1895, upon delivery of a quitclaim deed from the heirs of Lawrence Williams to said Page.

Hiram B. Williams, who was the administrator of the estate of Lawrence Williams, claimed in this transaction to act as agent and attorney of the other heirs and as an heir himself of Lawrence Williams, treating said land and buildings as real estate of the deceased with which his administrator had no concern.

Lawrence Williams left a widow, Emeline Williams, but no heirs of his body.

Said Emeline Williams died October 31, 1893, intestate. The plaintiff is her administrator de bonis non, and claimed that the deed of the premises held by said Lawrence Williams and his said agreement held by Page constituted an equitable mortgage of the property, and that the balance of money coming to him from Page under said agreement was an unpaid balance of money lent which was payable to the administrator of said Lawrence Williams as his legal representative, and should have been treated and administered as personal assets of said estate.

The defendants contended that Lawrence Williams, deceased, was the lawful owner of the Page premises and that the same descended to them as real estate. The answer of the defendants so asserted; and admitted that they have taken the money received from Page by said Hiram B. Williams, both the balance of said fifteen hundred dollars and interest paid by Page when their quitclaim deed was delivered to him and the one hundred and fifty dollars previously paid in installments by said Page to said Hiram B. Williams.

The plaintiff thereupon contended that the heirs of Lawrence Williams have thus obtained the whole amount due him, when he died, from said Page on account of said fifteen hundred dollars and interest, to wit, ten hundred eighteen dollars and thirty-two cents; whereas they were in law and equity entitled to have and receive

only one-half of the same, and the other moiety should have been paid to the plaintiff as administrator of the estate of said Emeline Williams for distribution among her heirs.

*S. J. and L. L. Walton; B. D. and H. M. Verrill,* for plaintiff.

The proof is conclusive not only that the deed from Page to Williams was given as security for a loan, but also that Page paid and performed as he agreed and as Williams stipulated. Had he failed to do so equity would have preserved his rights in spite of the forfeiture clause in the agreement. *Reed* v. *Reed,* 75 Maine, 264. But no question of forfeiture is raised or can be raised in this case. The absolute deed held by the deceased was, in view of the whole transaction, an obligation for money due to him. The court in *Rice* v. *Rice,* 4 Pick. 349, says: "It is not the less a mortgage because there was no collateral personal security, (promise) for the debt taken at the time." There was no necessity for Williams to take a note. The property being worth $2,100 and the loan only $1,500 this gave Williams security. The transaction was between a borrower and a lender, and not a real purchase of the land by the defendant Williams. *Campbell* v. *Dearborn,* 109 Mass. 130, 139; *Knapp* v. *Bailey,* 79 Maine, 195; *McPherson* v. *Hayward,* 81 Maine, 329. The transaction was more than a mere agreement to convey, or conditional sale. *Eaton* v. *Green,* 22 Pick. 526; *Klinck* v. *Price,* 4 West Va. 4; *Lewis* v. *Small,* 71 Maine, 552; *Stinchfield* v. *Milliken,* 71 Maine, 567; *Reed* v. *Reed,* 75 Maine, 264; *Libby* v. *Clark,* 88 Maine, 32.

As between Page and Lawrence Williams and the latter's heirs and legal representatives there can be no question that the realty remained the actual property of Page subject only to the lien which said Williams had as security for his loan. The defendants tacitly admitted this to be so and recognized Page's right to redeem by reconveying the premises upon payment of the balance of the loan. But in order to overreach the heirs of Emeline Williams they claimed, that the Page premises descended to them as a realty, that the installments of the loan paid by Page after the decease of Lawrence Williams were rent, and that the balance of Page's indebtedness was the purchase price which he paid them

for the premises.   The heirs took the legal title to the premises in trust only to secure the payment of the debt secured.   *Smith* v. *Dyer*, 16 Mass. 21;   *Kinna* v. *Smith*, 3 N. J. Eq. 14.   Counsel also cited:   *Adams* v. *Green*, 34 Barb. 176;   *Moore* v. *Burrows*, Id. 173;   *Sutter* v. *Ling*, 25 Pa. 466;   *Loring* v. *Cunningham*, 9 Cush. 87;   Croswell Exors. & Admrs. p. 185, § 332;   7 Am. & Eng. Ency. p. 281.

If the claim or the money received was personal assets one half of it would go to the heirs of Emeline Williams.   If realty the heirs of Lawrence Williams took the whole of it.   Mortgages, as well as deeds of trust to secure the payment of debts to the decedent, go to the executor or administrator.   1 Woerner on Am. Law of Administration, p. 595;   Croswell Exors. & Admrs. p. 189, § 339.

If there were any sound reason for drawing a line of distinction between legal and equitable mortgages, where only the parties and no third persons are concerned, such distinction would appear to be excluded by the language of the statute in question.   R. S., c. 90, § 12.   It is not the mortgages but "lands mortgaged to secure the payment of debts and the debts so secured" which are "assets in the hands of the administrator who shall have control of them as a personal pledge," etc.   Whether the mortgage is legal or equitable is immaterial.   In either case the premises are "lands mortgaged to secure the payment of debts," etc.   *Stinchfield* v. *Milliken*, 71 Maine, 567–570.

As the administrator Williams was one of the heirs and claimed to have received the money of Page as heir and as agent for the other heirs, a bill in equity is necessary to reach it.   It is a process in aid of the probate court.   *Gilman* v. *Gilman*, 54 Maine, 531;   2 Beach on Modern Eq. Jurisp. pp. 1111, 1114;   *Lawes* v. *Bennett*, 1 Cox Ch. 167.

*D. D. Stewart,* for defendants.

There was no element of a mortgage, either equitable or legal, in the final agreement between Lawrence Williams and Page.   By the final agreement Williams acquired the title to property worth $2,100,—a margin of $600 above the cost,—which made Wil-

liams' purchase perfectly safe.   He neither needed nor wished any claim on Page, but preferred to rely wholly upon the purchase of the property and its value.   There was no element of oppression, or of advantage, taken of Page.   He was under no obligation to pay a dollar unless he chose to; but the $600 margin was always as much of an object for him as for Williams.   Williams certainly took more chances, and run more risks, than Page.   Any depreciation, or loss, must fall on Williams; and if it went below $1,500, he had no remedy, for Page was under no obligation to take it. *Flagg* v. *Mann*, 14 Pick. 478.

" To deny," says Chief Justice Marshall in *Conway* v. *Alexander*, 7 Cranch, 236, "the power of two individuals, capable of acting for themselves, to make a contract for the purchase and sale of lands defeasible by payment of money at a future day, or in other words, to make a sale with a reservation to the vender of a right to. repurchase the same land at a fixed price, at a specified time, would be to transfer to the court of chancery, in a considerable degree, the guardianship of adults as well as of ˊinfants." *Campbell* v. *Dearborn*, 109 Mass. 141, 143.

No Maine or Massachusetts statutes cover equitable mortgages. They are therefore left as at common law; and upon the death of the mortgagee, the legal title descends to his heirs, or devisees, in case of a will; and unless the real estate is needed for payment of his debts, like any and all other real estate, his administrator has no interest in an equitable mortgage, and should not be made a party to a bill to redeem, or to enforce such mortgage.   *Woodbury* v. *Gardner*, 77 Maine, 75.   No right of redemption under an equitable mortgage is given by any statute of Maine.   No time is fixed by any statute within which such right must be exercised. *Richardson* v. *Woodbury*, 43 Maine, 213, 214; *Bank* v. *Stimpson*, 21 Maine, 195, 198.   In a suit by writ of entry by the mortgagee upon an equitable mortgage, no conditional judgment can be rendered. *Brown* v. *Kelleran*, 4 Mass. 443; *Eaton* v. *Green*, 22 Pick. 530; *Jewett* v. *Mitchell*, 72 Maine, 28, 29, 30.   Williams while living could have obtained no conditional judgment in a writ of entry against Page.   A fortiori his administrator could not.   And no

title vests in him, but descends to the heirs of the equitable mortgagee. *Wilson* v. *Black*, 104 Mass. 406, 407 ; *Jewett* v. *Mitchell*, 72 Maine, 28.

Even in a legal mortgage it has been often held that if there is no promise in the mortgage to pay and no note or collateral promise outside, the mortgagee has no claim upon the mortgagor personally. His only remedy is against the property itself. *Brookings* v. *White*, 49 Maine, 486 ; *Salisbury* v. *Phillips*, 10 Johns. 57 ; *Culver* v. *Sisson*, 3 Comst. 264, 265, 266. Under a mortgage at law, payment of the debt at the time fixed by the condition, of itself revests the title in the mortgagor, and no deed from the legal mortgagee is necessary. *Holman* v. *Bailey*, 3 Met. 55, 58 ; *Richardson* v. *Cambridge*, 2 Allen, 121. But under an equitable mortgage, payment at pay day revests no title in the mortgagor. It requires a reconveyance from the equitable mortgagee, or his heirs, which can only be enforced by a suit in equity. *Wilson* v. *Black*, 104 Mass. 407 ; *Richardson* v. *Woodbury*, 43 Maine, 210. No good conveyancer would have advised Page to pay out his money for a deed from the administrator alone after the death of Lawrence Williams. He would advise that the deed must come from the heirs and the widow. If the heirs, the widow, and the administrator of Williams all agreed in refusing to give Page a deed would his remedy be a bill in equity against the administrator to redeem from an equitable mortgage? The bill must be against the heirs and the widow to compel a conveyance under the agreement given by Williams to Page. *Wilson* v. *Black*, 104 Mass. 407. The money so received from Page would go one half to the heirs absolutely and the use of one half during life to the widow, with reversion to the heirs at her decease. The same result would follow if Page had presented a petition to the probate court under § 17, c. 71, R. S., asking the court to authorize the administrator of Mr. Williams to make a conveyance in accordance with the terms of Mr. Williams' contract with Page. Assuming that the plaintiff's theories are correct, then the deed of the heirs to Page conveyed no title whatever ; and the title still remains in the administrator. *Douglass* v. *Durin*, 51 Maine, 121 ; *Taft* v. *Stevens*,

3 Gray, 504, 506; *Palmer* v. *Stevens,* 11 Cush. 147; *Haskins* v. *Hawkes,* 108 Mass. 379; *Bird* v. *Keller,* 77 Maine, 271; *Hemmenway* v. *Lynde,* 79 Maine, 301.

Proper remedy in probate court: *Foster* v. *Foster,* 134 Mass. 120, 121, 123; *Wilson* v. *Leishman,* 12 Met. 316; *Sever* v. *Russell,* 4 Cush. 517; *Hallowell* v. *Ames,* 165 Mass. 124, 125.

SITTING: PETERS, C. J., EMERY, HASKELL, WHITEHOUSE, STROUT, SAVAGE, JJ.

HASKELL, J.   One Ira W. Page being the owner of certain land conveyed the same in fee to Lawrence Williams then alive, but now dead.   At the same time Williams gave Page a writing, not under seal, agreeing, among other things, that if Page should pay him fifteen dollars a month until he shall have paid $1500 with interest, that he, Williams, would reconvey the land.   The writing contained a stipulation that Page might occupy the premises so long as he fulfilled his part of the agreement, but that upon breach of any part of it he should forfeit all right to the land and money paid on account of it as well.

It appears that Page was owing $1500 secured on the land; that he applied to Williams for a loan of that amount on a mortgage, but that Williams said "he was not in the habit of taking mortgages on property at all; he would rather not if he could fix it in some other way"; thereupon he advanced the money, took a warrantee deed of the property and gave back the writing before mentioned.   "A legal mortgage was avoided; an equitable mortgage was made."   "If a transaction resolve itself into a security, whatever may be its form, and whatever name the parties may choose to give it, it is in equity a mortgage."   *Flagg* v. *Mann,* 2 Sum. 533; *Stinchfield* v. *Milliken,* 71 Maine, 567.   "Equity deals with the substance of things regardless of form or methods."   *Gray* v. *Jordan,* 87 Maine, 140; *Libby* v. *Clark,* 88 Maine, 32.

II.   Revised Statutes, c. 90, § 12, provides:   "Lands mortgaged to secure the payment of debts, or the performance of any collateral engagement, and the debts so secured, are on the death of the

mortgagee, or person claiming under him, assets in the hands of his executors or administrators; they shall have the control of them as of a personal pledge; and when they recover seizin and possession thereof, it shall be for the use of the widow and heirs, or devisees, or creditors of the deceased, as the case may be; and when redeemed, they may receive the money, and give effectual discharges therefor, and releases of the mortgaged premises."

No good reason appears why the above statute should not apply to equitable mortgages as well as to legal mortgages. They are both security. In neither one is the title absolute in the mortgagee. They are both subject to redemption and foreclosure. In substance, they more nearly represent money than land. Redemption turns them into money. Foreclosure of a legal mortgage produces a fee, while foreclosure of an equitable mortgage, which is sometimes by sale, yields money. Indeed, the equitable mortgage is more nearly akin to money than a legal mortgage, when its nature is fairly considered. We think the statute applies to "lands mortgaged," just as it reads; whether they are mortgaged in equity or in law, and that such mortgages are assets in the settlement of estates of deceased persons to be applied and distributed as personal estate.

III. Mortgages are assets, and mortgage debts are credits. The latter should be included in the inventory of estates of deceased persons and charged to the executor or administrator like all personal estate, and until redemption has expired, they hold the land "in trust for the persons who would be entitled to the money if paid," but if not paid, they may sell the debt and mortgage as personal estate and assign both. R. S., c. 65, § 32. "Any such real estate may, for the payment of debts, legacies or charges of administration, be sold by a license of the probate court like personal estate." Sec. 33. If neither redeemed nor sold "it shall be distributed among those who are entitled to the personal estate, but in the manner provided in this chapter for the partition of real estate; or the judge of probate or the supreme court may order it sold by the executor or administrator, and the money received distributed as personal estate. Sec. 35. But, if the mortgage be

equitable, and there be no writing or other evidence of a debt from the mortgagor that can be enforced at law independent of the security, the land may as well be inventoried as real estate, and only when reduced to cash, by redemption or sale, would the proceeds become chargeable to the executor or administrator. All this logically follows from the provisions of the statute before named. By its terms, lands mortgaged and the debts secured thereby upon the death of the mortgagee, become assets in the hands of his executors or administrators. The statute speaks of both security and of the debt, which from its nature is an asset. They, the executors and administrators, shall have control of them, the lands, as a personal pledge, and their possession shall be for the widow and heirs or devisees, or creditors, and when redeemed are to receive the money and give the proper discharge or release. When mortgages become foreclosed in such cases, the lands become vested in the widow and heirs or devisees as tenants in common until sold for the benefit of the creditors or otherwise in administration. *Longley* v. *Longley*, ante, p. 395. When redeemed the money, of course, becomes assets in the hands of the executors or administrators and should then be charged to them, unless the mortgage debt has already been inventoried as before stated, and of course charged to them as included in the inventory.

In the case at bar, Page redeemed the land and paid the money to the administrator of the mortgagee, who claimed to receive it as agent for the heirs of whom he was one, and omitted to charge himself with it as assets of the estate as he should have done. The plaintiff brings this bill, as administrator de bonis non of the widow of the deceased, to collect her moiety of the heirs who have received the money. His remedy is in the probate court, where such matters are heard and determined. He sues for a distributive share of an estate. Such action does not lie before the amount to be distributed has been ascertained in the probate court. The case of *Graffam* v. *Ray*, 91 Maine, 234, is in point. There the residuary legatee sued the administrator for devastavit. The doctrine of the case is that all distributive shares must be determined in the probate court, before they become payable to the distribu-

tee.  This bill therefore cannot be maintained, but the defendants, who detain assets to which they are not entitled, should not recover costs.

*Bill dismissed.*