## SMITH v. HOFF.

### (135 N. W. 772.)

**When deed with contract to reconvey will be deemed a mortgage.**

1. Where a conveyance of land is accompanied by an instrument of defeasance providing for the reconveyance of the property on the payment of a debt or performance of some other act intended to be secured thereby, the two instruments may in case of doubt be taken together and held to constitute a mortgage.

---

Note.—As to when a deed with a contract to reconvey will be deemed a mortgage, see note in 3 L. ed. (U. S.) 321.

When and how an absolute deed may be proved to be a mortgage generally, see notes in 17 Am. Dec. 300, 4 Am. St. Rep. 707.

As to whether a deed absolute on its face, but intended as a mortgage, conveys the legal title, see note in 11 L.R.A. (N.S.) 209.

### Parol evidence to show that deed was intended as mortgage.

2. For the purpose of reducing a deed, absolute and unconditional in its terms, to the character of a mortgage, it is not always immaterial whether the contract which constitutes the defeasance be incorporated in the same instrument; and if a deed absolute is given, and at the same time a separate defeasance is executed, parol evidence is admissible to connect the two writings and to show that they were parts of the same transaction, and that the whole amounted to and was intended to be a mortgage.

### Deed with contract to reconvey as mortgage.

3. When the grantor in a deed absolute at the same time takes back from the grantee a written contract giving the former a certain length of time in which to redeem the premises by paying the amount of the debt or consideration for the debt, and binding the latter to reconvey on such redemption, the two papers will generally be held to constitute a mortgage, and the effect of the transaction is not altered by the fact that the contract specifically limits the time for redemption and makes time an essential element in the right to redeem. But if the contract leaves it entirely optional with the grantor to redeem or not, and does not bind him to effect a redemption according to the agreement, it is rather to be held a conditional sale than a mortgage.

### Parol evidence to show that deed is intended as mortgage — weight and sufficiency of.

4. Where a conveyance is made in fee with a covenant of warranty, and there is no defeasance either in the conveyance or in a collateral paper, the parol evidence by which it is attempted to show that the deed was intended to secure a debt and operate only as a mortgage must be clear, unequivocal, and convincing, or the presumption that the instrument is what it purports to be must prevail. Where, however, there is a conveyance by deed and a defeasance in a collateral paper, or a contract for resale, and the evidence leaves it in doubt whether the transaction was intended as a conditional sale or as a mortgage, no such rule of strict proof applies, and the transaction will generally be treated as a mortgage.

### Transaction as mortgage or sale with right to repurchase.

5. When it is admitted or shown by separate written instrument that the transaction is not an unconditional sale as the deed imports, but either a mortgage or a sale with right to repurchase, the court, in the interest of complete justice, is inclined to construe the transaction as a mortgage; and on the question whether, in such case a mortgage or conditional sale was intended, any substantial doubt as to the intention will be resolved in favor of the construction that the conveyance is a security for a debt.

### Foreclosure sale — assignment of sheriff's certificate — agreement by assignee to reconvey to original debtor.

6. These considerations apply in cases where a third party, at the solicitation

of a debtor, takes an assignment of the sheriff's certificates given upon a foreclosure sale, and as a part of the same transaction gives back to the original debtor an agreement to resell and reconvey for the amount of money paid for such certificates, and obligating the said debtor to purchase the land and pay the said amount therefor.

Opinion filed March 25, 1912.

Appeal from the District Court of Ward county; *Goss, J.*

Action to determine adverse claims to land and quiet title thereto. Judgment for defendant. Plaintiff appeals.

Affirmed.

*Palda, Aaker, Green, & Kelso,* for appellant.

Evidence was wholly insufficient to sustain the claim that the transaction between plaintiff and defendant was that of a loan of money, with the sheriff's certificates and the contracts, Exhibit "1," as security therefor. 27 Cyc. 1025, and note; Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Forester v. Van Auken, 12 N. D. 175, 96 N. W. 301; Little v. Braun, 11 N. D. 410, 92 N. W. 800; McGuin v. Lee, 10 N. D. 160, 86 N. W. 714.

Time being expressly declared of the essence of the contract, default, followed by notice of cancelation, extinguished all rights of the defendant. Fargusson v. Talcott, 7 N. D. 183, 73 N. W. 207; Martinson v. Regan, 18 N. D. 467, 123 N. W. 285.

Defendant, having failed to redeem, was barred of all rights in the property after March 9, 1908. Southard v. Pope, 9 B. Mon. 261; Turpie v. Lowe, 158 Ind. 314, 92 Am. St. Rep. 310, 62 N. E. 484; Bigler v. Jack, 114 Iowa, 667, 87 N. W. 700; Russell v. Finn, 110 Iowa, 301, 81 N. W. 589.

*Scott Rex,* for respondent.

When it is doubtful whether the transaction is a mortgage or a conditional sale, it will generally be treated as a mortgage. Jones, Mortg. § 279, note 205; Kelley v. Leachman, 3 Idaho, 392, 29 Pac. 849; Jeffery v. Hursh, 58 Mich. 246, 25 N. W. 176, 27 N. W. 7; Heaton v. Darling, 66 Minn. 262, 68 N. W. 1087; 27 Cyc. 979, 998, cases cited, notes 10–12; Wilson v. McWilliams, 16 S. D. 96, 91 N. W. 453; Duerden v. Solomon, 33 Utah, 468, 94 Pac. 978; Jones v. Gillett, 142 Iowa, 506, 118 N. W. 314, 121 N. W. 5; Raski v. Wise, 56 Or.

72, 107 Pac. 984; Keithley v. Wood, 151 Ill. 566, 42 Am. St. Rep. 265, 38 N. E. 149; Halbert v. Turner, 233 Ill. 531, 84 N. E. 704; Hull v. Burr, 58 Fla. 432, 50 So. 754; Smith v. Jensen, 16 N. D. 408, 114 N. W. 306; Niggeler v. Maurin, 34 Minn. 118, 24 N. W. 369; King v. McCarthy, 50 Minn. 222, 52 N. W. 648; Clark v. Landon, 90 Mich. 83, 51 N. W. 357.

BRUCE, J.   This is an action to determine adverse claims to certain tracts of land in the city of Minot and the village of Palermo, and to quiet the title thereto.  It appears from the evidence that on June 5, 1903, the defendant, John C. Hoff, was the owner of the real estate in controversy, and on that date mortgaged the said property to the Minot National Bank for the sum of $1,000.   On July 15, 1905, the mortgage having been foreclosed, the premises were sold by the sheriff to the bank for the aggregate sum of $1,465.62.   Later, and on December 1, 1905, one Swords, as receiver, and for and on behalf of said bank, purchased a sheriff's certificate issued upon a judgment sale of a portion of the premises for the sum of $487.51.   On March 9, 1907, Swords, as such receiver, sold and assigned both of these certificates to the plaintiff and appellant, James L. Smith, for the sum of $2,500, and on March 22, 1907, sheriff's deeds were issued to Smith.   On March 9, 1907, and a short time before the issuance of the sheriff's deeds, but on the same day and immediately after the assignment to him of the certificates the plaintiff entered into a contract with the defendant, Hoff, in words and figures as follows:   "For and in consideration of the sum of $2,500 to be paid as hereinafter agreed, and on the faithful performance of the covenants, conditions, and agreements hereinafter expressed on the part of the party of the second part to be performed, kept, and fulfilled (the performance of each and every of said covenants, agreements, and conditions, as well as the payment of said money, being hereby expressly declared a condition precedent and of the essence of this contract) the party of the first part (the plaintiff) agrees to sell to the party of the second part the land in question.   And the party of the second part hereby covenants and agrees to purchase of the party of the first part, the above-described land and premises, and to pay therefor the sum of $2,500. . . .   And the party of the second part, for himself and his heirs, executors, administrators, and assigns, cove-

nants and agrees with the party of the first part, his heirs, and assigns, that should default be made in the payment or in any of the payments of the principal or interest, aforesaid, at the time or any other times above specified for the payment thereof, or in case the party of the second part fail to pay the taxes, etc., this agreement at the option of the party of the first part shall be null and void, and all payments that shall have been made under this agreement, and the land and all the buildings and improvements thereof, shall be and forever remain the absolute property of the party of the first part; . . . it being expressly understood and agreed that time is of the essence of this contract, . . . and it is mutually covenanted and agreed that in case default shall be made on the part of the party of the first part in any of the covenants and agreements herein contained to be performed by him, and the party of the first part shall see fit to declare this contract null and void by reason thereof, such declaration may be made by notice from the party of the first part served upon the party of the second part as provided by law," etc. This contract was signed by the plaintiff, Smith, and by the defendant, Hoff. It is also fairly well established by the evidence, though there is a conflict upon this point, that at about the same time Hoff paid to Swords the difference between the $2,500 and the amount due to the bank on the sheriff's certificates. No notes, however, or other evidence of indebtedness, were given to Smith in this transaction, and defendant has never paid anything to the plaintiff on the contract and never paid any taxes on the real property, and was wholly in default on the 16th day of March, 1908. On that date the plaintiff served on defendant a notice of cancelation of the contract under the statute, and this notice fixed the 18th day of April, 1908, as the day on which the contract would terminate. On April 18, 1908, defendant caused a notice to be served upon the plaintiff to the effect that he had deposited in the Farmers & Merchants' State Bank at Palermo the sum of $2,451.27 to meet the payments due, and had instructed the said bank to pay over the said money upon the receipt of a good and sufficient warranty deed. The evidence, however, shows that no such money was ever actually paid to the bank, nor is there any proof of any further effort towards performance of the contract on the part of the defendant, nor any other assertion of title to the property until the commencement of the action at bar, which was on April 28,

1908. The defendant, however, was in the possession of the land both on March 9, 1907, and at the time of the trial.

In his answer to this action defendant asked to have it decreed "that the plaintiff had no right, title, or interest or estate in the premises involved, save and excepting a mortgage therein; that such mortgage can only be foreclosed in the manner prescribed by law, and that the defendant be adjudged entitled to redeem from such foreclosure at any time within one year from the day of such foreclosure sale. The claim of plaintiff in the action, in short, was that he bought the certificate of sale outright from the receiver, Swords; that he gave the defendant a contract of sale, to reconvey upon the latter performing the conditions of the contract on or before March 9, 1908; that the defendant defaulted in these conditions; that plaintiff gave due notice of the termination of the agreement, and that such notice and such default operated to extinguish all interest or right of the defendant in the property. The defendant claimed, on the other hand, that the assigning of the sheriff's certificates from the receiver of the bank to the plaintiff, Smith, and the subsequent issuance of the sheriff's deeds thereunder to the plaintiff, and the execution of the contract between the plaintiff and the defendant, constituted one transaction between plaintiff and defendant, in the nature of a loan of money, with the legal title under the sheriff's deeds and the said certificates held by plaintiff as security only for the repayment of the $2,500 loan. The trial court found and decreed that plaintiff had no right, title, estate, or interest except that of an equitable mortgagee in the sum of $3,267.-50, and from this judgment plaintiff appeals.

The question for determination is whether at the time the appellant purchased the certificates from the receiver of the bank he did so as the agent of the respondent, Hoff, loaning to him, at the time, the $2,500 necessary to pay the original mortgage and judgment debts, and to take up the certificates of sale and taking the certificates and sheriff's deeds in his own name as security for such advances. In other words, whether the certificates of sale which were assigned to Smith, and the sheriff's deeds, which were afterwards obtained, constituted an equitable mortgage.

It seems to be well established that if a conveyance is made in fee with a covenant of warranty, and there is no defeasance either in the

conveyance or in a collateral paper, the parol evidence by which it is attempted to show that the deed was intended to secure a debt and operate only as a mortgage must be clear, unequivocal, and convincing, or the presumption that the instrument is what it purports to be must prevail. Coyle v. Davis, 116 U. S. 108, 29 L. ed. 583, 6 Sup. Ct. Rep. 314; Cadman v. Peter, 118 U. S. 73, 30 L. ed. 78, 6 Sup. Ct. Rep. 957; Jasper v. Hazen, 4 N. D. 1, 23 L.R.A. 58, 58 N. W. 454; Smith v. Jensen, 16 N. D. 408, 114 N. W. 306. The rule, however, appears to be different where there is a conveyance by deed and a defeasance in a collateral paper or a contract for resale, and the evidence leaves it in doubt whether the transaction was intended as a conditional sale or as a mortgage. In such case the transaction will, as a general rule, be treated as a mortgage. "The character of the deed," says the supreme court of Alabama in Cosby v. Buchanan, 81 Ala. 574, 1 So. 898, "must be determined by the intention of the parties clearly and satisfactorily proved. When it is absolute, and only parol evidence is relied on, the party affirming that the conveyance was intended as a security for a debt must show that such was the intention by clear and convincing evidence. But when it is admitted or shown by separate written instruments that the transaction is not an unconditional sale as the deed imports, but either a mortgage or a sale with right to repurchase, the court, in the interest of complete justice, is inclined to construe the transaction as a mortgage, and on the question whether in such case a mortgage or conditional sale was intended, the same degree of proof is not requisite. Any doubt as to the intention will be resolved in favor of the construction that the conveyance is a security for a debt." This rule and exception seems to be abundantly borne out by the authorities. See Mitchell v. Wellman, 80 Ala. 16; Turner v. Wilkinson, 72 Ala. 361; McNeill v. Norsworthy, 39 Ala. 156; Russell v. Southard, 12 How. 145, 13 L. ed. 929; O'Neill v. Capelle, 62 Mo. 202; Keithley v. Wood, 151 Ill. 566, 42 Am. St. Rep. 265, 38 N. E. 149; Rose v. Gandy, 137 Ala. 329, 34 So. 239; Smith v. Jensen, 16 N. D. 408, 114 N. W. 306; Duerden v. Solomon, 33 Utah, 468, 94 Pac. 978, 980; Wilson v. McWilliams, 16 S. D. 96, 91 N. W. 453; Jones, Mortg. § 279; Trucks v. Lindsey, 18 Iowa, 504; Rockwell v. Humphrey, 57 Wis. 412, 15 N. W. 394; Snavely v. Pickle, 29 Gratt. 27. Much, of course, depends upon the nature of the con-

tract to reconvey, and as to whether it expressed a conditional sale, a purchase which is optional with the grantee, or whether it is obligatory upon such grantee. See 27 Cyc. p. 999; Haynie v. Robertson, 58 Ala. 37.

In the case at bar the contract of sale was clearly not what might be termed a contract for a conditional sale. In it Hoff agreed to purchase, and if the land had decreased in value, could have been compelled to purchase. Nor is it necessary that in order to constitute a mortgage the transaction should be contained in one and the same document. "Where a deed of land absolute and unconditional on its face," says Mr. Henry Black, in 27 Cyc. 994, "is accompanied by an instrument of defeasance providing for the reconveyance of the property to the grantor or the revesting of title in him on his paying a debt or performing some other act intended to be secured thereby, the two instruments will be taken together and held to constitute a mortgage. At the same time an instrument of defeasance executed by the grantee in an absolute deed contemporaneously with the latter for reconveyance to the grantor on his paying a sum of money does not always make the transaction a mortgage. Its character depends on the inquiry whether the contract is a security for the repayment of money. If so it is a mortgage; otherwise it may be a conditional sale. . . . For the purpose of reducing a deed, absolute and unconditional in its terms, to the character of a mortgage, it is entirely immaterial whether the contract which constitutes the defeasance be incorporated in the same instrument or in a separate instrument contemporaneously executed. And when a deed absolute is given, and at the same time a separate defeasance is executed, parol evidence is admissible to connect the two writings, and to show that they were parts of the same transaction, and that the whole amounted to and was intended to be a mortgage. . . . When the grantor in an absolute deed, at the same time takes back from the grantee a written contract giving the former a certain length of time in which to redeem the premises by paying the amount of the debt or consideration for the deed, and binding the latter to reconvey on such redemption, the two papers constitute a mortgage. And the effect of the transaction is not altered by the fact that the contract specifically limits the time for redemption, and makes the time an essential element in the right to redeem. But if the contract leaves it entirely optional

with the grantor to redeem or not, and does not bind him to effect a redemption according to the agreement, it is rather to be held a conditional sale than a mortgage." The courts indeed seem to make a radical distinction between the cases in which a deed which is absolute upon its face is sought to be shown to be a mortgage by oral proof merely, and those cases in which there is a contract to reconvey as well as the original deed. Where there is a deed and a contract to reconvey, and oral evidence has been introduced tending to show that the transaction was one of security, and leaving upon the mind a well-founded doubt as to the nature of the transaction, then courts of equity incline to construe the transaction as a mortgage. Gassert v. Bogk, 7 Mont. 585, 1 L.R.A. 240, 19 Pac. 281; Wilson v. McWilliams, 16 S. D. 96, 91 N. W. 453, and cases therein and before cited.

We are not prepared to say, with counsel for the respondent, that the evidence clearly shows that the transaction was in the nature of a loan. We do hold, however, that there is evidence strongly tending towards this conclusion, and, as we have before stated, we understand the law to be that where a contract of sale is given back which obligates the purchaser to buy and which is not conditional in its nature, the presumption is not merely that such a transaction constitutes a mortgage, but that the courts of equity will incline strongly to that view. There is no material dispute in the evidence except that furnished by the bankruptcy proceedings, that the property sold or mortgaged was worth two or three times the amount of the debt. The witness William Olson states that the value of the land at Palermo was $3,000, while that of the witness Lewis is to the effect that the land at Minot was worth from $3,500 to $4,500. A. A. Robinson testifies that the Minot property was worth from $3,500 to $4,000, and John Ehr places the value from $3,500 to $3,800. While mere discrepancy in the consideration is conclusive, it is a matter which will be considered by the courts. It seems strange indeed, that if the transaction was originally intended to be anything else but a loan, that the appellant Smith should have agreed on the same day that he purchased it, to resell it for the identical amount paid, and this in a contract which was not in its form a conditional sale, but one which obligated the defendant to buy. Appellant admits that he never saw the Palermo property; that he had no idea of its value, and that he had no use

for any of the property, and the witness Johnson states that he told Smith that "he did not need to be scared of taking that investment, loan, or whatever I called it, because if Hoff did not pay him I considered the property good enough for the money." He also stated that Smith asked him if he thought that "if Hoff did not pay him he could get his money out of the property." There can be no doubt from the testimony that Swords extended the original loan and refrained from taking the sheriff's deeds in order that Hoff might have a chance to redeem, and that Swords was anxious that Hoff should have such opportunity. It is also undisputed that the land contract called for the same amount of interest as the original mortgage and the sheriff's certificate. It is true that both Smith and Swords testify that Smith stated that he would not lend the money to Hoff to take up the loan, but it is also true that on cross-examination Smith testified that the contract was made "through the consideration, I suppose, of Mr. Swords to Mr. Hoff, to give him a chance if he wanted the property at the end of a year, . . . for the purpose of accommodating Mr. Hoff and give him a chance to get the property back on payment of the amount of money." We believe, in short, that if the transaction had been comprised in a deed from Hoff to Smith alone, and it had been sought to declare that deed a mortgage, that the evidence would hardly justify such action, as in that case under the authorities, the proof required would have to be clear, consistent, unequivocal, satisfactory, and convincing; but that, the transaction being in the nature and form of a deed to the appellant, or an assignment of the certificates, which amounts to the same thing, and a contract from the appellant to reconvey, which contract bound the respondent to pay and was not conditional or optional in its nature, that under the authorities the evidence is sufficiently confusing and conflicting to put in operation the equitable rule which applies in such cases, that "where there is a deed and a contract to reconvey, and oral evidence has been introduced tending to show that the transaction was one of security, and leaving upon the mind a well-founded doubt as to the nature of the transaction, courts of equity will incline to construe the transaction as a mortgage." Nor do we think that the fact that Mr. Schull, respondent's attorney, seems to have labored at one time under the impression that the transaction constituted a sale, and gave notice of a deposit of the money under the pro-

visions of art. 3, chap. 30, of the Code of Civil Procedure, and in response to a notice from the appellant requiring such payment under the contract, in any way changed the nature of the transaction. The doctrine that "once a mortgage always a mortgage" would still apply. A transaction which was originally a mortgage cannot be converted into a sale by reason alone of a mutual mistake of the parties. See Jones, Mortg. 6th ed. § 340; Clambey v. Copeland, 52 Wash. 580, 100 Pac. 1031; Wells v. Geyer, 12 N. D. 316, 96 N. W. 289.

It is undisputed that the mortgages to the bank having been foreclosed, the premises were sold by the sheriff to said bank on July 15, 1905, and that later, and on December 1, 1905, the receiver of the bank purchased a sheriff's certificate of sale on another judgment for the sum of $87.51, so that on March 9, 1907, there was owing to the bank about the sum of $2,586.69. The witness Swords testifies that he did not immediately get a sheriff's deed, because he did not want the property. His business was to collect money, not to get property; that he had been working with Hoff for some time prior to March 9, 1907, to collect his money; that he was instrumental in bringing about the transaction between Hoff and Smith on the 9th day of March, 1907; that Mr. Hoff said he could not pay any of it, or words to that effect, "and he wanted me to borrow some money, try and get him some money, and I did try, and I don't know how I learned that Louis Smith had money, but I wanted to get the money of Louis, and he said he had a deal or two with Hoff, and he would not have anything to do with him, and he would not loan him money; and I said, 'I will sell it to you. I don't want the stuff; I want the bank's money,' and he said he would take it; that the amount paid the bank was $2,586.69." I was trying to get the bank's money, and I was having a good deal of trouble to get it. I tried to borrow the money of Mr. Smith, and he would not loan it to Mr. Hoff, and I said, 'Louis, I will assign you my rights, all I want is my money.' I think I had given him the records properly, so I had no desire to hurt anybody. I said, 'Give him a contract to repurchase within a year,' and he said he would, and the contract was then executed. I do remember telling Mr. Hoff: 'You are not dealing with me. You have a year in which to purchase this property. Now hustle around and get the money.' I remember that I did not want any advantage of anybody. I was extending a

favor to Mr. Hoff by so doing. I desired to be strictly honest in the transaction, and tried to do what was right. The bank got the money at the time this contract was made, at the time of the assignment of the sheriff's certificates."

Mr. Smith testifies: "I never had any talk with Mr. Hoff prior to the execution of this contract of sale in regard to this property at all. I paid Mr. Swords the amount he demanded for the assignment of the certificates. In the purchase of this property I did not have any negotiations with Hoff himself at any time, but with Mr. Swords. My understanding was that Mr. Swords was to give me the title he had, the sheriff's deeds, and give Mr. Hoff a contract to purchase at the end of a year, provided he paid the interest and taxes and principal on or before March 9th. I was to give him a contract for deed for $2,500 on these conditions. Nothing was said to me that this was to be a mortgage, and not a complete title. I never talked with Mr. Hoff about it. I paid Mr. Swords $2,500 for the assignment of these certificates. I might have been negotiating with Mr. Swords for two weeks. I remember I refused to loan any money on the property at that time. It was along, as I said before it might be along, about two weeks before I finally bought the property from Mr. Swords. I believe Mr. Swords was in possession of both properties, I don't know. I mean Mr. Hoff was in possession of the Minot property, and I don't think the Palermo property was in the possession of anybody. I was afraid to make the loan, because I was afraid possibly the property was not worth it. Q. You were willing to buy it? A. When you loan money, property must be worth more. Q. And you were willing to sell it back? A. When you loan money shouldn't the property be worth more than the amount you loan, in case you loan money? Q. Yet you were willing to sell it right back at the price you paid for it? A. Well, according to the contract, I was willing to go by the contract. Q. How did you happen to make that contract, Mr. Smith? A. It was through Mr. Swords, through the consideration, I suppose, of Mr. Swords to Mr. Hoff to give him a chance if he wanted the property at the end of the year. It seems to me it was for the purpose of accommodating Mr. Hoff and give him a chance to get the property back on payment of the amount of money." Smith also admits that he had no particular use for the property at the time.

Mr. Hoff testifies: "He (Swords) wanted to know where I could get the money, and I couldn't say, and he gave me a little time on it. Finally he says: "I got to have it, but he was satisfied when I took it up and fixed it up all right. He figured it up, and I told him I will try to get that money. I was told by George Swords that he knew a fellow that had the money. It was about fourteen days before we made out the papers. Mr. Smith was to let me have about $2,500, pretty close to $2,700 was due to Swords. I was in Swords' office on the 9th day of March, 1907. I found there Swords and his typewriter, and someone else, I don't remember. I signed the mortgage for the money, for $2,500. My wife also signed the instrument. It was understood that it was a mortgage deed the same as was signed to the other bank that time that we got the money at that bank. Mr. Swords said it was a mortgage. He said the paper was to secure the $2,500." His testimony clearly points to a mortgage transaction. He says that he paid to the receiver of the bank the balance between the amount due under the former mortgage and the $2,500 paid by Smith. There can be no question that after the foreclosure sale the period of redemption was deemed to be extended. Hoff testifies that about fourteen days or three weeks before the papers were made out he had a conversation with Smith, and Smith said that "it would be all right to let me have that money for that security, including the property here and the other 8 acres at Palermo, and I could have my chance to buy it back at any time I wanted to, simply over a year, because he did not want to let me have it then for 12 per cent and 12 per cent I thought was steep, and he said I could pay it back sooner, but I asked him if it was all right, and so he said." He testified that the matter was always talked of as a loan. He says he did not sign a note, "nothing but the mortgage deed as security." Much of the confusion in the testimony is probably due to an effort on the part of the counsel for respondent to prove a stronger case than he really had, and the mere fact that the witnesses refused to conform their testimony to his theory casts no discredit upon their veracity. It is true, in fact, that there was an attempt on the part of attorneys for the respondent to prove that at the time of the transaction in question Hoff and his wife actually gave to Smith a deed of the premises, and that after the receipt of such deed, Smith and Hoff executed the land contract in controversy, and

that the giving of this separate deed is hardly supported by the evidence, and that the evidence is conflicting in regard thereto. It seems to us quite clear, however, that counsel had in their mind the giving of this deed, and that Hoff did not have any recollection of it, and, as a matter of fact, the giving of the deed was immaterial, as the sheriff's certificate and the subsequently acquired sheriff's deed were sufficient. It seems quite plain to us that when asked about this deed Hoff had in mind the land contract which he signed, and this is quite easily explainable by the fact that in such cases usually two copies are made out, one of which is retained by each party. Hoff certainly signed the copy that was retained by Smith. It is quite easy to understand how he testified that he gave Smith a deed or mortgage at the time the land contract was handed to him.

He testifies:

Q. What took place when you got to Mr. Swords' office?

A. Well, Swords handed us the paper we should sign for that money I borrowed for to pay up the papers as was against the property up to the bank, and to Kulass, which have been talked about.

Q. At that time, Mr. Hoff, did you sign Exhibit 1, being the contract?

A. Yes, sir.

Q. What other papers did you sign at that time?

A. Well, I signed the mortgage for the money.

Q. You signed a mortgage at that time?

A. Yes, sir.

Q. For how much money?

A. $2,500.

Q. Now, Mr. Hoff, I will ask if you did not sign a deed or mortgage upon the land involved in this action to James L. Smith upon the 9th day of March, 1907, at the time you signed the contract, Exhibit 1?

A. Yes, sir; yes, I did, sure.

Q. Was that deed or mortgage given by you at the time to secure the payment of the $2,500?

A. Yes, that was the only reason I got the $2,500.

Q. In your direct examination I asked you about a certain mort-

gage or deed which you and Mrs. Hoff signed in favor of James L. Smith on the 9th day of March, 1907. I will ask you now if you are able to state whether or not that was an instrument commonly known as a deed or mortgage?

A. If I knew it was a deed or mortgage?

Q. I don't want you to tell what it was meant for, or anything of that kind. I want to know what kind of a paper it was, a deed or mortgage. State if you know?

A. No, sir.

Q. You don't know what it was called, now?

A. A mortgage deed it was called to me

Q. What called it that?

A. Swords.

Q. Now, Mr. Hoff, during your negotiations with Mr. Swords and Smith which culminated on March 9, 1907, was anything ever said at any time in regard to selling the property to Smith?

A. No, sir.

The case, indeed, seems to come within the rule which is laid down in Wilson v. McWilliams, 16 S. D. 96, 91 N. W. 453, and where, under a very similar state of facts, the court held that where money was advanced at the request of the mortgagor to bid in the property at a sheriff's sale, and the title thereto was taken in the name of the person advancing the money for the benefit of such owner, with the understanding that he would convey the same back to the said owner on the payment of the money, the transaction in equity constituted a mortgage. "While it is undoubtedly true," the court said, "that to show that a deed in effect an absolute conveyance is intended as a mortgage to secure the debt, the evidence must be clear, satisfactory, and convincing, yet if, from all the evidence, a doubt arises as to whether the transaction was a mortgage or a conditional sale, such doubt must be resolved in favor of holding the instrument a mortgage."

The case of Turner v. Wilkinson, 72 Ala. 361, is also very much in point. In it the transaction was held to constitute an equitable mortgage, and in it the court laid down a criterion as applicable in the case before it, and which would be equally applicable in the case before us. "Although," says the court, "it is difficult to establish fixed rules by

which to determine whether a particular transaction is a mortgage or a conditional sale, there are some facts which are regarded as of controlling importance in determining the question. Did the relation of debtor and creditor exist, before and at the time of the transaction? or, if not, did the transaction commence in a negotiation for a loan of money? Was there great disparity between the value of the property and the consideration passing for it? Is there a debt continuing, for the payment of which the vendor is liable? If any one of these facts is found to exist, in a doubtful case, it will go far to show a mortgage was intended. If all of them are found concurring, the transaction will be regarded as a mortgage, rather than a conditional sale, unless the purchaser, by clear and convincing evidence, removes the presumptions arising from them."

In the case of Hawes v. Williams, 92 Me. 483, 43 Atl. 101, the court said: "It appears that Page was owing $1,500 secured on the land; that he applied to Williams for a loan of that amount on a mortgage, but that Williams said 'he was not in the habit of taking mortgages on property at all; he would rather not if he could fix it some other way.' Thereupon he advanced the money, took a warranty deed of the property, and gave back the writing before mentioned. 'A legal mortgage was avoided; an equitable mortgage was made.'" Whenever the transaction resolved itself in the security whatever may be its forms, and whatever the name the parties may choose to give it, it is in equity a mortgage.

In the case of Kelley v. Leachman, 3 Idaho, 392, 29 Pac. 849, the court said: "The proof shows that the plaintiff was never in actual possession of the land; that the deed was given to plaintiff for the amount of money named therein, which was furnished by the plaintiff to pay off certain indebtedness of the defendant to other parties. The agreement of defeasance, or for reconveyance, was given to afford defendant an opportunity to repay the money with interest, and thus procure a reconveyance of the land. The questions for the determination of this court are, Was this an absolute conveyance of the title to the land in question, or must the deed and agreement to reconvey be held a mortgage, and will ejectment lie to gain possession of the land? The agreement to reconvey was executed on the same day as the deed. It was given by the grantee in the deed to the grantor, recites the giving

of the deed, and contracts to reconvey the land described, upon the payment of the sum mentioned as the consideration in the deed, with interest thereon at a specified rate, all taxes and assessments, etc., made upon the land. These two writings, taken together, constitute a mortgage. 1 Jones, Mortg. § 20. It would have constituted a mortgage if there had been simply a parol agreement made between the parties to reconvey upon the payment of a stipulated sum. Jones, Mortg. § 248. It might have been in that case more difficult to prove the contract. This being an agreement in writing, there is no difficulty about the proof. In Smith v. Smith, 80 Cal. 325, 21 Pac. 4, 22 Pac. 186, 549, the court say: 'It is the settled rule in that state that if a deed, absolute in form, was made merely to secure an indebtedness to the grantee, it is a mere mortgage, and does not pass the title.' . . . When, at the time of the execution of an absolute conveyance, a separate defeasance or agreement to reconvey is also executed, the transaction at law will constitute a mortgage. Where the deed and defeasance have been executed and delivered at the same time, and form parts of one transaction, as in this case, the courts have universally considered them as constituting a legal mortgage."

We are not unmindful of the cases of Russell v. Finn, 110 Iowa, 301, 81 N. W. 589, and Bigler v. Jack, 114 Iowa, 667, 87 N. W. 700, which are cited by counsel for appellant; and the former of which, at any rate, seems, to a greater or less degree, to sustain his propositions. In the latter of these cases, however, lack of proof of inadequacy of consideration seems to have been the controlling element, and both of the cases must be considered in the light of the former case of Trucks v. Lindsey, 18 Iowa, 504, in which it was said: "This rule of equity which attaches the right of redemption to every grant made as a security does not in the least interfere with the right or power of persons to make a conditional sale. It is, therefore, competent for parties to make a purchase and sale of lands with a reservation to the vendor of a right to repurchase the same land within a given time at an agreed price. A resort, however, to a formal conditional sale as a device to defeat the equity of redemption, will, of course, when shown, be unavailing for that purpose. And the possibility of such resort, together with other considerations, has driven courts of equity to adopt

as a rule that when it is doubtful whether the transaction is a conditional sale or a mortgage, it will be held to be the latter."

The judgment of the District Court is affirmed.

Goss, J., having presided on the trial in the court below, being disqualified, did not participate.